**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION**

| | |
|---|---|
| HALEY WILLIAMS, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-00989 – JMV-JRA |
| Plaintiff, | **Motion Date:** |
| v. | **ORAL ARGUMENT REQUESTED** |
| SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendant. | |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT SAMSUNG ELECTRONICS
AMERICA, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

**BERGER MONTAGUE PC**
Lawrence Deutsch
Jeffrey Osterwise
1818 Market Street
Philadelphia, PA 19103
215.875.3062
ldeutsch@bm.net
josterwise@bm.net

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Neil Grossman
40 Calumet Avenue
Lake Hiawatha, New Jersey 07034
973.335.6409
973.335.3717
neil@bgandg.com
-and-
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
212.697.8209
peretz@bgandg.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION...........................................1

II.  RELEVANT FACTUAL BACKGROUND............................3

III. LEGAL STANDARD........................................7

IV.  ARGUMENT..............................................8

    A.  Williams Adequately Pleads the Overheating
        Defect and SEA's Knowledge Thereof.................8

        1.  Rule 8 Is the Correct Pleading Standard.......9

        2.  The FAC Describes the Overheating Defect
            and SEA's Knowledge Thereof in Sufficient
            Detail.......................................13

    B.  New York Law Is the Governing Law.................19

    C.  Williams states a claim for breach of the
        implied warranty of merchantability...............25

    D.  Williams states a claim for SEA's breach of
        express warranty..................................28

    E.  Williams states a claim under the Magnuson
        Moss Warranty Act ("MMWA").......................31

    F.  Williams Alleges Sufficient New York Nexus
        Under NYGBL §§ 349 and 350.......................33

    G.  Williams States a Claim Under Wis. Stat. §
        100.18(1).........................................35

    H.  Williams Properly Claimed Unjust Enrichment.......37

    I.  Williams has standing to pursue injunctive
        relief............................................39

V.  CONCLUSION...........................................40

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agnesian Healthcare v Rtf Mfg. Co.*,
  345 Wis. 2d 848, 826 N.W. 2d 123(2012) .................... 37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................ 8

*Bailey v. Janssen Pharmaceutica, Inc.*,
  288 F. App'x 597 (11th Cir. 2008) ........................ 16

*Barnes v. West, Inc.*,
  249 F. Supp. 2d 737 (E.D. Va. 2003) ...................... 32

*Bd. of Educ. of the Twp. of Cherry Hill, Camden Cnty. v.
  Hum. Res. Microsystems, Inc.*, No. CIV 09-5766 JBS/JS,
  2010 WL 3882498 (D.N.J. Sep. 28, 2010) ................ 23, 24

*Beaton v. SpeedyPC Software*, No. 13-CV-08389,
  2023 WL 2711416 (N.D. Ill. Mar. 30, 2023) ................ 34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................... 7, 9

*Burzlaff v. Thoroughbred Motorsports, Inc.*,
  758 F.3d 841 (7th Cir. 2014) ............................. 32

*Butera v. Honeywell Int'l, Inc.*, No. CV 18-13417-SDW
  LDW, 2020 WL 64568 (D.N.J. Jan. 6, 2020) ................. 27

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
  489 F. Supp. 3d 282 (D.N.J. 2020) ..................... 20, 21

*Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 NGG
  VVP, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ........... 35

*Cohen v. Subaru of Am., Inc.*, No. 120 CV 08442 JHR AMD,
  2022 WL 721307 (D.N.J. Mar. 10, 2022) ................. 24, 25

*Connelly v. Lane Const. Corp.*,
  809 F. 3d 780 (3d Cir. 2016) ............................. 12

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) .......................... 34, 35

*Davis v. BMW of N. Am., LLC*, No. 19-CV-19650,19-CV
  19650,
  2022 WL 3646571 (D.N.J. Aug. 23, 2022) ................... 39

*DeCoteau v. FCA US LLC*, No. 2:15 CV 00020 MCE-EFB,
  2015 WL 6951296 (E.D. Cal. Nov. 10, 2015) ............. 14, 15

*Demmick v. Cellco P'ship*, No. CIV.A.,06-2163 JLL,
  2010 WL 3636216 (D.N.J. Sept. 8, 2010) .................... 22

*Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA,
  2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ................ 17

*Ecovacs Robotics Inc.*,No. 21-CV-07890-SI,
  2022 WL 4087512 (N.D. Cal. Sept. 6, 2022) ................ 27

*EMA Fin., LLC v. NFusz, Inc.*,
  444 F. Supp. 3d 530 (S.D.N.Y. 2020) ...................... 34

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ......................................... 7

*Fain v. Am. Honda Motor Co.*, No. CV 19-2945-MWF-PJWx,
  2019 WL 8690214 (C.D. Cal. Dec. 19, 2019) ................ 16

*Fiuzzi v. Paragon Sporting Goods Co. LLC*,
  212 A.D.3d 431, 181 N.Y.S.3d 544 (2023) .................. 25

*Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*,
  No. 13-CV-0331-GPC-KSC,
  2013 WL 4401437 (S.D. Cal. Aug. 15, 2013) ................ 14

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) ............. 17, 38, 39

*Francis v. Gen. Motors, LLC*,
  2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) ................ 38

*Gordon v. Dailey*, No. CV 14-7495,
  2018 WL 1509080 (D.N.J. Mar. 27, 2018) ................... 7, 8

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314, 774 N.E.2d 1190 (2002) ................. 34, 35

*Gregorio v. Ford Motor Co.*,
  522 F. Supp. 3d 264 (E.D. Mich. 2021) .................... 15

*Hardt v. Chrysler Grp. LLC*, No. SACV14-01375-SJO-VBKx,
  2015 WL 12683965 (C.D. Cal. June 15, 2015) ............... 13

*Harney v. Associated Materials, LLC*, No. 3:16-CV-1587
  2018 WL 468303 (D. Or. Jan. 18, 2018) .................... 16

*Hassan v. City of New York*,
  804 F.3d 277(3d Cir. 2015) ................................ 17

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  355 F. Supp. 3d 582 (E.D. Mich. 2018) ..................... 39

*In re Gen. Motors Air Conditioning Mtkg. and Sales
  Pracs. Litig.*, 568 F. Supp. 3d (E.D. Mich. 2021) ......... 32

*In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No.
  11 C,5468,
  2012 WL 3582708 (N.D. Ill. Aug. 16, 2012) ................ 17

*In re: Elk Cross Timbers Decking Mktg.*, No. 2577,
  2015 WL 6467730 (D.N.J. Oct. 26, 2015) ................... 30

*Karkalas v. Marks*,
  845 F. App'x 114 (3d Cir.) ................................. 7

*Kruzits v. Okuma Mach. Tool, Inc.*,
  40 F.3d 52 (3d Cir. 1994) ............................. 33, 34

*Leonard v. Abbott Lab'ys*, Inc., No. 10-CV-4676 ADS WDW,
  2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ................... 10

*Livingston v. Trane Inc.*, No. CV176480ESMAH,
  2019 WL 397982 (D.N.J. Jan. 31, 2019) .................... 31

*Loo v. Toyota Motor Sales, USA, Inc.*, No. 819 CV-00750-
  VAP-ADSx,
  2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ................ 15

*Maloney v. Microsoft Corp.*, No. CIV. 09-2047,
  2011 WL 5864064 (D.N.J. Nov. 21, 2011) ............... 22, 23

*McCalley v. Samsung Elecs. Am., Inc.*, No. CIV. A. 07-
  2141 (JAG),
  2008 WL 878402 (D.N.J. Mar. 31, 2008) .................... 26

*McQueen v. BMW of N. Am., LLC*, No.,CIVA. 12-6674 SRC,
  2013 WL 4607353 (D.N.J. Aug. 29, 2013) ............... 14, 15

*Merino v. Ethicon Inc.*,
  536 F. Supp. 3d 1271 (S.D. Fla. 2021) .................... 19

*Milisits v. FCA US LLC*, No. 20-CV-11578,
  2021 WL 3145704 (E.D. Mich. July 26, 2021) ............... 16

*Miller v. Samsung*, No. CIV. A.,14-4076,
  2015 WL 3965608 (D.N.J. June 29, 2015) ................... 22

*Mosqueda v. Am. Honda Motor Co.*, Inc.,
  443 F. Supp. 3d 1115 (C.D. Cal. 2020) .................... 16

*Murillo v Kohl's Corp.*,
  197 F. Supp. 3d 1119 (E.D. Wis. 2016) ................ 36, 37

iv

*Nikolin v. Samsung*, No. CIV. A. 10-1456,
  2010 WL 4116997 (D.N.J. Oct. 18, 2010) .................... 22

*Opheim v. Volkswagen Aktiengesellschaft,* No. CV. 20-
  02483 KM ESK,
  2021 WL 2621689 (D.N.J. June 25, 2021) ............... 38, 39

*Pauly v. Houlihan's Rests., Inc.*, No. CIV 12-0025 JBS,
  2012 WL 6652754 (D.N.J. Dec. 20, 2012) .................... 38

*Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20 CV
  05889 VAP-ADSx,
  2020 WL 10354127 (C.D. Cal. Nov. 18, 2020) ............... 15

*Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-CV 01503-
  JLS-ADS,
  2021 WL 1808628 (C.D. Cal. May 5, 2021) .................. 14

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ............................... 10

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ........................... 9, 12

*Plumbers' Loc. Union No. 690 Health Plan v. Sanofi*,
  S.A., No. CV 15-956 (KM) MAH,
  2017 WL 1822277 (D.N.J. May 4, 2017) ..................... 10

*Pro v. Hertz Equip. Rental Corp.*, No. CIV A 06-CV-3830,
  2008 WL 5218267 (D.N.J. Dec. 11, 2008) ................... 20

*Rich Prod. Corp. v. Kemutec, Inc.*,
  66 F. Supp. 2d 937 (E.D. Wis. 1999) ...................... 26

*Rowland v. Bissell Homecare, Inc.*,
  73 F.4th 177 (3d Cir. 2023) ............................... 32

*Salcedo v. Nissan N. Am., Inc.*, No. CV 22-4152-GW-MARx,
  2023 WL 332761 (C.D. Cal. Jan. 18, 2023) ................. 12

*Schuchardt v. President of the United States*,
  839 F.3d 336 (3d Cir. 2016) ............................... 9

*Sciacca v. Apple, Inc.*,
  362 F. Supp. 3d 787 (N.D. Cal. 2019) ................. 14, 16

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) ............................... 11

*Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*,
  30 F. Supp. 3d 166 (E.D.N.Y. 2014) ....................... 39

*Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-CV-
01298-JLS- KES,
2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ................... 16

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................ 17

*Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW,
2015 WL 3487756 (D.N.J. June 2, 2015) .................... 27

*Suber v. Chrysler Corp.*,
104 F.3d 578 (3d Cir. 1997) .............................. 32

*Synergies Grp., LLC v. Andrews*, No. CV 18-13381,
2019 WL 3780098 (D.N.J. Aug. 12, 2019) ................... 20

*Taylor v. BMW of N. Am., LLC*, No. CV 20-1994 (KM)(JBC),
2021 WL 1186777 (D.N.J. Mar. 29, 2021) ................... 27

*Tietsworth v. Harley-Davidson, Inc.*,
270 Wis. 2d 146 (2004) ................................... 35

*Tzakis v. Wright Med. Tech., Inc.*, No. 19-CV-545-WMC,
2020 WL 955016 (W.D. Wis. Feb. 27, 2020) ................. 11

*United States ex rel. Chorches for Bankr. Estate of
Fabula v. Am. Med. Response, Inc.*,
865 F.3d 71 (2d Cir. 2017) ............................... 11

*United States v. Amedisys, Inc.*, No. 17-CV-136 (JLS),
2023 WL 2481144 (W.D.N.Y. Mar. 13, 2023) ................. 11

*Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB),
2016 WL 6441518 (S.D. Cal. Nov. 1, 2016) ................. 15

*Villanueva v. Am. Honda Motor Co.*, No. CV19-1390-MWF,
2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) ................ 12

*Wesley v. Samsung Elecs. Am., Inc.*, No. 20-CV-18629,
2023 WL 3496024 (D.N.J. May 17, 2023) .................... 18

*Wesley v. Samsung Elecs. Am., Inc.*, No. CV 20-18629
2022 WL 16509541 (D.N.J. Oct. 20, 2022) .................. 18

*Wesley v. Samsung Elecs. Am., Inc.*, No. 20-CV-18629,
2021 WL 5771738 (D.N.J. Dec. 3, 2021) .................... 18

*Weston v. Subaru of Am., Inc.,* No. 1:20-CV-05876, 2022
WL 1718048 (D.N.J. May 26, 2022) ......................... 12

*Wetzel v. Am. Motors Corp.*,
693 F. Supp. 246 (E.D. Pa. 1988) ......................... 32

vi

*Witt v. Howmedica Osteonics Corp.*, No. 13-CV-20742-JLK,
  2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) ................. 14

*Yost v. Everyrealm, Inc.*, No. 22 CIV. 6549 (PAE),
  2023 WL 2224450 (S.D.N.Y. Feb. 24, 2023) .................. 6

**Statutes**

15 U.S.C. § 2310(d)(3)(C) ................................... 32

28 U.S.C. § 1367 ........................................... 32

N.Y. Gen. Bus. Law (NYGBL) §§ 349 and 350 ....... 2, 33, 34, 35

N.Y. U.C.C. Law § 2-313 .................................... 30

Wis. Stat. § 100.18(1) ..................................... 35

Wis. Stat. Ann. § 402.313 .................................. 30

**Rules**

Federal Rule of Civil Procedure 8 ...................... passim

**Other Authorities**

Restatement of Conflict of Laws 187(a) ..................... 34

Uniform Commercial Code (UCC) 2-314 ....................... 25

Plaintiff Haley Williams ("Williams") respectfully submits this Memorandum in Opposition to Samsung Electronics America, Inc. ("SEA")'s Motion to Dismiss the First Amended Complaint ("FAC").

## I.   <u>INTRODUCTION</u>

Williams ordered a Class Laptop for over $1,000, after reading on Samsung's website about a high-speed computer with at least 16-17 hours of battery life. FAC, ¶¶ 19, 20, 42. However, swiftly after purchase her laptop began overheating to the point that she would have to turn it off due to heat and loid fan noise. FAC, ¶¶ 23, 24. Soon, the laptop lost the ability to connect to the internet. FAC, ¶ 25. Williams had to send in her laptop to Samsung for repair. FAC, ¶ 26. But Samsung didn't repair the Class Laptop, responding "no defects found." FAC, ¶¶ 28, 30. A few months later, Williams complained to Samsung about overheating and short battery life.  Samsung service center eventually canceled Williams' repair ticket. FAC, ¶¶ 31 – 33.

Defendant complains that the FAC lacks sufficient detail regarding the Overheating Defect.  But the FAC details the causes of the Overheating defect – including shallow casing, insufficiently raised feet pads, and overcrowded internal hardware. The FAC alleges that Samsung knew of the Overheating Defect when it sold Class Laptops, as evidenced by online complaints and Samsung's including instructions with Class Laptops warning of a potential "a burning smell," FAC ¶ 58.

1

Defendant argues that New York law, as selected by Samsung's Terms and Conditions for samsung.com sales, should not apply. But the New York choice of law provision is broad, covering all claims. Samsung, incorporated and selling in New York drafted the broadly worded choice-of-law clause.

Similarly unavailing is Defendant's contention that the defect manifested after the end of the applicable warranty period. But the Overheating Defect manifested within months of Williams's purchase. She sought repairs within the one-year express warranty period. Defendant also argues that Plaintiff failed to allege reliance on that warranty. However there is no reliance required where the Defendant admits there is an express warranty. Further, Plaintiff read and relied upon the warranty.

As to Defendant's particular objections to the applicability of NYGBL §§ 349 and 350 on the grounds of a territorial restriction, Samsung, a New York corporation that sells in New York, drafted the choice of law provision.

Defendant also contends that the WDTPA claim should be dismissed because, it claims, Plaintiff alleges an omission and not an affirmative misrepresentation. That contention overlooks the gravamen of William's complaint that Samsung misstated the Class Laptops as fast, slim, and with 16-17 hour long battery life – when they were all but unusable.

Defendant's remaining arguments are similarly without merit. Defendant's motion to dismiss Plaintiff's sufficiently pled complaint should therefore be denied.

2

## II.   RELEVANT FACTUAL BACKGROUND

As described in the FAC, the Class Laptops[1] have an
Overheating Defect that causes them to malfunction and renders
them inoperable. FAC, ¶¶ 25, 31, 33. The Overheating Defect is
caused by three flaws in the Class Laptops' cooling system,
inadequate ventilation, poor thermal conductivity, and
insufficient heat dissipation. FAC, ¶ 2. The inadequate
ventilation results from the Class Laptops' shallow casing,
insufficiently raised feet pads, and overcrowded internal
hardware. That configuration restricts proper airflow and leads
to heat buildup. The poor thermal conductivity results from the
poor choice of materials used in the Class Laptops' thermal
paste and heat pipes. Those materials exhibit subpar thermal
conductivity thereby impeding heat transfer. The insufficient
heat dissipation results from ineffective fans and heat sinks.
*Id.*

The FAC details the consequences of the Overheating Defect.
FAC, ¶3. Overheating causes the CPU and the GPU to throttle
(slow down to reduce heat build up), reducing processing power
and performance. It damages, sometimes irreparably, internal
components, such as the motherboard, graphics card, hard drive,
and, as happened to Williams, the network driver. It can even
pose a safety risk to users in that the high temperatures can
cause burns as well as battery malfunction that leads to fire.

---

[1] Unless otherwise defined, capitalized terms have the same
meaning as defined in the FAC.

The Overheating Defect cause Williams' laptop to malfunction almost immediately after she purchased it in June 2021. FAC, ¶22. The laptop would overheat to the extent that Williams would have to turn it off regularly. FAC, ¶¶ 22-23. Also, the Overheating Defect caused the fans to run continuously and loudly. FAC, ¶¶ 23. Consistent with the described consequences of the cooling system's inadequacies, Williams' laptop's network driver had become entirely inoperable by late March 2022. FAC, ¶25. It was then that Williams commenced her efforts to obtain help from SEA to rectify or repair the Overheating Defect. Williams first contacted SEA in April 2022 and informed SEA of a typical consequence of the Overheating Defect, that her laptop would not connect to the internet even after she went through the troubleshooting suggestions. FAC, ¶26. Williams duly sent in her laptop for repair, only to have SEA return it with the report that "no defects" had been found. FAC, ¶28. SEA's so-called repair service failing to instill confidence, Williams immediately emailed SEA that she hoped the " 'issue doesn't come back,' " thus putting SEA on notice that the sale of the laptop to Williams remained troublesome. FAC, ¶29. Additionally, upon inspection of the laptop after its return from SEA's service center, Williams noticed that it showed signs of warping from overheating, the right-side corner near the trackpad had a dent protruding outwards, and the tabs on the back vent had been broken. FAC, ¶30.

Williams' hopes notwithstanding, the Overheating Defect remained unrepaired in her laptop. In October 2022, Williams once again informed SEA's service representative that the computer was rendered useless due to the constant overheating and related problems, that the laptop had been overheating for months, but had recently worsened, and that she had already sent it in for repair, but the unit still smelled like it was melting. FAC, ¶ 33. She also expressed her fear to the representative that the laptop would physically hurt her. *Id*. Although on this occasion as well, Williams was issued a service ticket, SEA cancelled it before she had an opportunity to send in her laptop for repair. *Id*. In fact, Williams measured the actual high temperatures that her laptop reached around the time that she attempted, for the second time, to have SEA repair it. FAC, ¶¶ 34 - 35. The Overheating Defect that had manifested in Williams' laptop soon after purchase remains unabated.

Williams' misfortune with the Overheating Defect, as well as its causes and effects, were reflected in the experience of other users and testers as set forth in the FAC. For example, the Men's Journal review commented that the Galaxy Book would get very hot and the battery life would diminish quickly. FAC, ¶46; a zdnet review concluded that the overheating was due to the thinness of the device, FAC, ¶48; and complaints posted on SEA's community forum, to which SEA's community forum manager responded, reported that the Class Laptops would overheat, FAC, ¶¶ 50 - 56. One of the SEA community complaints suggested that

5

the Galaxy 2 Pro would overheat while running basic programs "'probably due to the laptop being very thin with insufficient air space inside to cool down the CPU,'" FAC, ¶53.

Purchasers of the Class Laptops also posted complaints regarding the Overheating Defect in the Class Laptops to Reddit. FAC, ¶¶ 59 – 61. The opening post of a thread dated May 23, 2021, stated that "the laptop heats up pretty quickly while doing some causal work like watching video or editing a doc…I think there is something fundamentally wrong with the device…I'm quite disappointed with samsung."[2] A response to that post, also dated May 23, 2021, from user Poweful444, agreed, stating, "I've noticed mine kick on far too much and get warm doing very little…The fan seems efficient at least but it is probably the design being so thin. Form over function. Everything about this laptop is form first." Further posts in that same thread by other purchasers confirm they experienced similar malfunctions consistent with the Overheating Defect. reddit.com, *available at*

---

[2] This post was inadvertently omitted from the FAC. However, because this thread was in the public domain at the time of the filing of the complaint and is only being offered to show that it was publicly available, the Court is respectfully requested to take judicial notice of it, especially as the existence of such evidence of SEA's knowledge was alleged upon information and belief in ¶ 49 of the FAC. *Yost v. Everyrealm, Inc.*, No. 22 CIV. 6549 (PAE), 2023 WL 2224450, at *2 (S.D.N.Y. Feb. 24, 2023) (considering – for the limited purpose of taking notice of the fact that certain public statements were made – tweets and new articles first cited in plaintiff's opposition to motion to dismiss).

https://www.reddit.com/r/GalaxyBook/comments/nit9nb/galaxy_boo k_pro_360_fan_issue/. (*last accessed* May 21, 2023). Notably, the FAC points out that SEA itself mentioned the Overheating Defect in the appendix to the express warranty, which included an instruction to contact the service center if the Class Laptops emit smoke or a burning smell. FAC, ¶ 58.

## III. <u>LEGAL STANDARD</u>

On a motion to dismiss, the court accepts all well-pled allegations as true, construes them in the light most favorable to the plaintiff, and draws all reasonable inferences in plaintiffs' favor. *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir.), *cert. denied*, 211 L. Ed. 2d 282, 142 S. Ct. 464 (2021) "At that point, if a complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);). *Karkalas, supra.* Plaintiffs do not have to plead "detailed factual allegations.[.]" *Twombly*, *supra,* 550 U.S. 544 at 555 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") (quotation and alteration omitted). "Instead, the Court simply asks whether the plaintiff has articulated enough facts to state a claim to relief that is plausible on its face." *Gordon v. Dailey*, No. CV 14-7495, 2018 WL 1509080, at *2 (D.N.J. Mar. 27, 2018) (citation omitted). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.   ARGUMENT

### A.   Williams Adequately Pleads the Overheating Defect and SEA's Knowledge Thereof.

The FAC sets forth the Overheating Defect with more than enough particularity to satisfy the pleading standards and to put SEA on notice of the allegations against it. The FAC explains what the defect is, what the defect tends to cause, and what malfunctions it in fact caused in Williams' laptop as well as in other Class Laptops. The FAC also presents sufficient facts from which the Court may reasonably infer that SEA was aware of the Overheating Defect but nevertheless elected to misrepresent the defect in its sale of the Class Laptops. Thus, Williams, in her claims regarding the Overheating Defect and its causes and effects in her laptop, in particular, and in the Class Laptops, in general, met her burden of pleading a coherent explanation of the defect. FAC, ¶¶19 – 38. Moreover, Williams painstakingly listed the facts - including product reviews, consumer complaints on SEA's community forum and on third-party platforms, and SEA's own instructions to the consumer included in the written warranty - from which the Court can reasonably infer that SEA was well aware of the Overheating Defect. FAC, ¶¶ 45 – 61.

### 1. **Rule 8 Is the Correct Pleading Standard**

Federal Rule of Civil Procedure 8 sets forth the general rules of pleading. Rule 8, in subsection(a), governing claims for relief, requires "a short and plain statement of the claim showing that pleader is entitled to relief." As such, Rule 8 does not require specific facts. *See Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (cautioning that Rule 8 "does not impose a heightened pleading requirement" and noting that the Supreme Court has "disavowed the requirement that a plaintiff plead specific facts") (alteration, quotation marks, and citation omitted); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-33 (3d Cir. 2008) (noting that the Supreme Court "expressly reaffirmed that Rule 8 requires only a short and plain statement of the claim" and there is no probability requirement at pleading stage) (citing *Twombly*, 550 U.S. at 554-55). Significantly, as the Third Circuit explained in *Phillips*, "the *Twombly* decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading." *Phillips*, 515 F.3d at 232. Especially given the straightforward context of the FAC - the Overheating Defect in the Class Laptops, of which SEA was aware, that derived from the three cooling system flaws and resulted in high temperatures, damage to the hardware, and function failure - the detailed facts pleaded in the FAC readily satisfy Rule 8. The SAC gives SEA fair notice of what the claim is and the grounds upon which it rests.

Even if Rule 9(b) applies, as SEA argues, its reach in this case is limited. For example, in *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005), the Second Circuit reasoned that because NY GBL "§ 349 extends well beyond common-law fraud to cover a broad range of deceptive practices and…because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, the heightened pleading standard of Rule 9(b) does not apply to it." *Id.* (internal citations omitted). Attempts to limit *Pelman* to its facts were found to be unpersuasive. "Read together, *Pelman* and *Smoke-Spirits.com* establish a categorical rule that NYCPA claims, regardless of whether they "sound in fraud", or are premised on specific misrepresentations rather than an "advertising scheme", are not subject to the heightened pleading requirement of Rule 9(b). *Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012). Courts in this district have agreed. *See, e.g., Plumbers' Loc. Union No. 690 Health Plan v. Sanofi*, S.A., No. CV 15-956 (KM) (MAH), 2017 WL 1822277, at *8 (D.N.J. May 4, 2017) (applying Rule 8 and not Rule 9(b) to NY GBL § 349). Thus, at the very least, Rule 9(b) does not apply to the NY GBL § 349 claim raised herein.

Further and more generally, although allegations of date, place, and time fulfill the "purpose of Rule 9(b)" of "[placing] the defendants on notice of the precise misconduct with which they are charged, and [safeguarding] defendants against spurious

10

charges of immoral and fraudulent behavior," nothing in the rule
requires such allegations. Plaintiffs may use "alternative means
of injecting precision and some measure of substantiation" into
their "allegations of fraud." *Seville Indus. Mach. Corp. v.
Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).
Moreover, allegations may be based on information and belief
when facts are peculiarly within the opposing party's knowledge.
*United States v. Amedisys, Inc.*, No. 17-CV-136 (JLS), 2023 WL
2481144, at *3 (W.D.N.Y. Mar. 13, 2023). Or, stated otherwise,
because the purpose of the heightened pleading requirement in
fraud cases is to "force the Plaintiff to do more than the usual
investigation before filing his complaint, "the Rule 9(b)
requirements are relaxed when specific details are within
defendants' exclusive knowledge or control." *Tzakis v. Wright
Med. Tech., Inc.*, No. 19-CV-545-WMC, 2020 WL 955016, at *3 (W.D.
Wis. Feb. 27, 2020) (internal citations and quotations omitted).
Critically, the "adequacy of particularized allegations under
Rule 9(b) is "'case-and context specific'". *Amedisys, Inc.*, 2023
WL 2481144, at *id. citing United States ex rel. Chorches for
Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71,
81 (2d Cir. 2017) 865, F.3d at 81. Thus, in view of the purpose,
limitations, and consequent flexibility in the application of
Rule 9(b), the FAC survives SEA's motion to dismiss even under
that more stringent standard.

Nevertheless, SEA demands that Williams explain with
technical exactitude precisely what the cause of the Overheating

11

Defect is. MTD, at 10 – 14, 29. However, at this stage, Williams only needs to "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.,* 809 F. 3d 780, 789 (3d Cir. 2016) (relying on *Phillips*, 515 F.3d at 232). Essentially, SEA is asking the Court to require Williams to fully understand the nature of the Overheating Defect and the inner workings of relatively complex machinery without the benefit of a developed record.

But courts have upheld allegations similar to those herein even in cases that involved more complex components, such as safety systems in modern vehicles. *See, e.g., Weston v. Subaru of Am., Inc.,* No. 1:20-CV-05876, 2022 WL 1718048, at *5 (D.N.J. May 26, 2022) (finding alleged unintended acceleration defect sufficiently pleaded, citing cases "denying relief under Rule 8 here class action plaintiffs identified (i) the vehicle party they believed defective; (ii) the source of the Defect; and (iii) examples of how the Defect manifests, and collecting cases holding same"); *Villanueva v. Am. Honda Motor Co.*, No. CV19-1390-MWF-MAAx, 2019 WL 8112467, at *6 (C.D. Cal. Oct. 10, 2019) (upholding defect allegations involving a "complex" "Collision Mitigation Braking System" in vehicles even though the plaintiffs did not "dispute that they did not identify a specific defect within the CMBS"); *Salcedo v. Nissan N. Am., Inc.*, No. CV 22-4152-GW-MARx, 2023 WL 332761, at *4 (C.D. Cal. Jan. 18, 2023) (allegations of a defect in the automatic braking systems

was sufficient even though the plaintiff did not identify the specific part of the system believed to be defective); *see also Hardt v. Chrysler Grp. LLC*, No. SACV14-01375-SJO-VBKx, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015) (finding, in case involving allegedly defective manual transmissions, that "[t]he description of the symptoms sufficiently set forth the specific facts on which Plaintiffs base their belief that there is a defect"). *A fortiori*, the Court should uphold Williams' allegations because they involve simpler components that she does identify, such as the shallow casing and the insufficient fans, that lead to the Overheating Defect.

<b>2.   <u>The FAC Describes the Overheating Defect and SEA's Knowledge Thereof in Sufficient Detail</u></b>

Indeed, ¶¶2-3 of the FAC explain that the laptops overheat as a result of an inadequate cooling system that derives from three flaws: inadequate ventilation, insufficient heat dissipation, and poor thermal conductivity. That explanation identifies the inadequacies in the design and materials of the Laptops that lead to the heat buildup. The explanation also describes the effects of overheating, which are likely to result from the flaws, which manifested in Williams' laptop, FAC, ¶¶ 21 – 36, and which were observed by other Laptop consumers and reviewers, FAC, ¶¶ 45 -47, 49 – 55, 58 – 60. Similarly, the FAC listed sufficient instances of SEA's knowledge[3] of the

---

[3] Additional evidence of SEA's knowledge appears in Section II.

Overheating Defect, including consumer reviews on SEA's community forum and on third-party sites. FAC, ¶¶ 45 -62.

These detailed factual allegations in the FAC contrast with the allegations in *DeCoteau*, cited in the MTD, at 11, where the plaintiffs only alleged "generally that there must be one or more defects in the DDCT and assert that those defects cause various injuries." *DeCoteau v. FCA US LLC*, No. 2:15 CV 00020 MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015). Unlike those cases where the plaintiffs only identified the defect symptoms while failing to provide an explanation for the underlying cause, the FAC is far from "silent on identifying the defect that causes such consequences." *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019).[4]

---

[4] *See also Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, No. 13-CV-0331-GPC-KSC, 2013 WL 4401437, at *3 (S.D. Cal. Aug. 15, 2013) ("Plaintiff's complaint fails to sufficiently state what particular component or product was allegedly defective . . . Plaintiff simply alleges that GE and other defendants manufactured a defective product . . . ."); *McQueen v. BMW of N. Am., LLC*, No. CIV.A. 12-6674 SRC, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("Throughout her Complaint, Plaintiff merely identifies the effects of the alleged defect . . . .There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective."); *Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-CV-01503-JLS-ADS, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021) (alleging there is "*some* defect in the Gamma Engines is, again, insufficient notice of *what* defect is at issue.") (emphasis in the original); *Witt v. Howmedica Osteonics Corp.*, No. 13-CV-20742-JLK, 2013 WL 6858395, at *2 (S.D. Fla. Dec. 30, 2013) (finding the allegation - that the prosthesis was defective because it contained design defects such as loosening - was vague and overbroad where plaintiff characterized the problem as a "potential" one and the plaintiff had been legally required to plead why defect was unreasonably dangerous.").

Because Williams has alleged in detail what exactly is wrong with the Class Laptops, this case is readily distinguishable from *DeCoteau* and other cases where plaintiffs failed to plead details regarding alleged defects. *Loo v. Toyota Motor Sales, USA, Inc.*, No. 819 CV-00750-VAP-ADSx, 2019 WL 7753448, at *5 (C.D. Cal. Dec. 20, 2019) (plaintiff allegations "sufficiently exceed what the court required in *DeCoteau*" by "explaining how Defendant's transmission system functions and why Plaintiffs believe the transmission systems in their vehicles are faulty."); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 274 (E.D. Mich. 2021) (finding explanations of what was allegedly causing symptoms in Ford vehicles transmission "go beyond a conclusory statement that the cars contain a defect and beyond a description of symptoms. This case is thus distinguishable from *DeCoteau* . . . ."); *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2016 WL 6441518, at *5 (S.D. Cal. Nov. 1, 2016) (plaintiffs "provided specific facts to create a plausible inference of a defect in the transmission" by identifying the alleged source of the problem). By identifying the source of the Overheating Defect in the Class Laptops and explaining why the defect causes the problems that Williams and consumers have experienced, Williams has provided SEA sufficient notice to defend itself. *See Gregorio*, 522 F. Supp. 3d at 274; *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20 CV 05889 VAP-ADSx, 2020 WL 10354127, at *7 (C.D. Cal. Nov. 18, 2020) (finding case unlike *DeCoteau* and *McQueen* because the plaintiffs alleged

the "mechanical details" of the defect); *Mosqueda v. Am. Honda Motor Co.*, Inc., 443 F. Supp. 3d 1115, 1127 (C.D. Cal. 2020) (distinguishing *Yagman* on the basis that the plaintiff in that case never alleged a defect at all); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-CV-01298-JLS- KES, 2021 WL 62502, at *3 (C.D. Cal. Jan. 4, 2021) (explaining that unlike in *Sciacca* and *Yagman*, the plaintiffs alleged the cause of the underlying problems); *Fain v. Am. Honda Motor Co.*, No. CV 19-2945-MWF-PJWx, 2019 WL 8690214, at *4 (C.D. Cal. Dec. 19, 2019) (similar).

SEA's insistence that Williams provide further detail in explaining the Overheating Defect, including a breakdown of the components of each model of the Class Laptops, Def. Br. at 13, ignores the realities of the pleading stage where "[i]t is difficult for a plaintiff at this stage in the litigation to know the source of the defect that was responsible for the harm caused[.]" *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605 (11th Cir. 2008). Williams has not yet had access to SEA's internal analysis of the defect. *Id.* "To require a sophisticated statement of the mechanical . . . failings of the" Class Laptops, as SEA argues, "would place a prohibitively high burden on plaintiffs at the pleading stage, and would go beyond the requirements of Rule 8(a)." *Harney v. Associated Materials, LLC*, No. 3:16-CV-1587-SI, 2018 WL 468303, at *3 (D. Or. Jan. 18, 2018); *see also Milisits v. FCA US LLC*, No. 20-CV-11578, 2021 WL 3145704, at *3 (E.D. Mich. July 26, 2021) (declining to fault plaintiffs for not fully understanding the

16

problems without the benefit of discovery) (citing *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 678 (E.D. Mich. 2020)). Rule 8 does not require such an unrealistic level of detail, and "these allegations are enough to provide notice of [Williams'] claims" as SEA "can later challenge their factual truth or show that the defect and the symptoms are not linked." *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at \*5 (C.D. Cal. Nov. 23, 2020).

SEA claims that it is not enough to allege the cause of the defect and explain its mechanical workings, but Williams must also rule out routine causes, such as internal dust buildup, for the Overheating Defect. MTD, at 13. SEA's argument finds no basis in the law. In *Hassan v. City of New York*, the court made clear that on a motion to dismiss, it is "'only when [a] defendant's plausible alternative explanation is so convincing' to render the 'plaintiff's explanation . . . *im*plausible' that a court may dismiss a complaint." 804 F.3d 277, 297 (3d Cir. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)) (alterations and emphasis in original). In any event, Williams did allege that she troubleshooted and took impeccable care of the Laptop, FAC ¶¶ 24-25, 32. Thus, the only plausible inference is that the Overheating Defect was due to SEA and not someone or something else. *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2012 WL 3582708, at \*7 (N.D. Ill. Aug. 16, 2012) (rejecting defendant's argument that "a reasonable inference of [a] defect arises only if the

17

Plaintiffs' factual allegations suggest that a [] defect was more likely than any of the alternative explanations Defendants raise as affirmative defenses.").

SEA relies heavily on the three *Wesley* cases - *Wesley v. Samsung Elecs. Am., Inc.*, No. 20-CV-18629, 2021 WL 5771738 (D.N.J. Dec. 3, 2021); *Wesley v. Samsung Elecs. Am., Inc.*, No. CV 20-18629 2022 WL 16509541 (D.N.J. Oct. 20, 2022); and *Wesley v. Samsung Elecs. Am., Inc.*, 2023 WL 3496024 (D.N.J. May 17, 2023). Def. Br. at 2, 10, 11, 12, 13, 14, 25, 26, 32, 33, 34 – in support of requiring an unprecedented heighted level of specificity for alleging a defect. In those cases, however, the court found that the allegations were confusing because it was not clear which part was responsible for which defect. *See e.g.*, *Wesley*, 2022 WL 16509541, at *3 (finding that some of the factual allegations, concerning various component parts of the oven ranges, were ambiguous as to the actual defect, its severity, and its cause). Here, in contrast, the Overheating Defect was simply and clearly described in the FAC: There were three flaws in the inadequate cooling system that resulted in overheating, which, in turn, led to slower, less reliable performance and even system-wide shut-down. SEA's demands for more detail are unfounded and premature. "[I]t would be unreasonable for the Court to require [p]laintiff to plead exactly how the implanted [p]roduct is defective and how it caused [her] alleged injuries when Plaintiff has not yet been afforded discovery or the benefit

18

of expert testimony.") (internal quotations omitted). *Merino v. Ethicon Inc.*, 536 F. Supp. 3d 1271, 1283 (S.D. Fla. 2021)

The Court should uphold Williams' Overheating Defect allegations and her claims of SEA's knowledge thereof and allow her claims to proceed.

**B.  New York Law Is the Governing Law**

All of Williams' claims, as well as the express and implied warranties SEA issued to Williams, arise from the point Williams purchased her laptop on SEA's website. The Terms and Conditions of Sale ("TCS" or "Terms"), referred to in ¶ 9 of the FAC control sales on SEA's website as stated by the TCS itself: "By placing an order on Samsung.com, you agree to the terms and conditions below (the 'Terms')." The choice-of-law provision of the TCS, Section 11, broadly provides that "[t]he formation, existence, construction, performance, validity and *all aspects whatsoever* of these Terms will be governed by the law of the State of New York, without reference to its choice of law principles." (emphasis added). Because the choice-of-law provision applies to the "Terms," and the Terms apply to purchases made on SEA's website, the choice of law applies to purchases made on SEA's website, such as that of Williams and other class members.

In interpreting the reach of choice-of-law provisions, courts in this district have distinguished between broad and narrow choice of law clauses. "Choice of law clauses that use the language 'governed and construed by,' as is the case here, are considered to be broad capturing both contract and tort

19

claims, particularly tort claims that relate to the contract." *Pro v. Hertz Equip. Rental Corp.*, No. CIV A 06-CV-3830 DMC, 2008 WL 5218267, at *5 (D.N.J. Dec. 11, 2008), *amended*, No. CIV.A.06-3830(DMC), 2009 WL 1010622 (D.N.J. Feb. 3, 2009); *Corp. Synergies Grp., LLC v. Andrews*, No. CV 18-13381, 2019 WL 3780098, at *3, n. 7 (D.N.J. Aug. 12, 2019) (broadly-worded choice of New Jersey law provision in non-solicitation and confidentiality agreements appears to encompass New Jersey Trade Secrets Act tort claims arising from agreements). As in *Hertz* and *Corp. Synergies*, SEA itself drafted a "broad and all encompassing" clause. *Id*. at *6 (*citing Sullivan v. Sovereign Bancorp Inc.*, 33 F. App's 640, 642 (3d Cir. 2002)). By so doing, SEA selected the law of New York to apply to controversies, such as the instant action, that arise from purchases on its website, which purchases are governed by the TCS. Moreover, even a "facially contractual choice-of-law clause may extend to claims in tort" where a contract's choice of law provision is broad and all-encompassing. *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 301 (D.N.J. 2020) (internal citations omitted). Therefore, because all of the claims in this action stem from the point of purchase on the SEA website, and SEA selected New York law to apply to such purchases, the substantive law to be applied to this action is that of New York.

Another factor in favor of applying New York law to the instant claims, in addition to SEA's obvious intention that New York law govern sales on its website as expressed in the choice-

of-law provision, is the nexus that SEA has to New York by being incorporated in the state. "In diversity cases such as this one," courts look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Id.* at 300. New Jersey relies on Section 187 of the Restatement (Second) of Conflicts of Laws in choice-of-law determinations. *Id.* Section 187(a) of the Restatement (Second) stipulates that a choice-of-law provision will prevail unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *A fortiori*, here, where there *is* a substantial relationship between SEA and the chosen state, the choice of law provision should be honored. *See id. at 310.*, (finding that plaintiff's being authorized to conduct business activities, and in fact conducting business in the chosen state, even without being incorporated in New Jersey, means that New Jersey does not lack a substantial relation to the parties or the transaction).

SEA brings examples from caselaw where choice-of-law provisions were construed narrowly so as to limit the chosen law to disputes arising from the agreement that included the choice-of-law provision. Def. Br. at 15 – 17. Even if the choice-of-law provision in the TCS is construed narrowly, however, New York law should still apply. As explained above, Williams' claims arise from the subject matter of the TCS, namely,

purchases made on SEA's website. Similarly, in *Demmick v. Cellco P'ship*, No. CIV.A. 06-2163 JLL, 2010 WL 3636216, at *3 (D.N.J. Sept. 8, 2010), the court found the contract's choice of law provision sufficiently broad to govern fraud claims where they shared the same factual basis as the breach of contract claims. Moreover, the TCS in the two cases that SEA cites with purportedly analogous Terms to those herein - *Miller v. Samsung*, No. CIV. A. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015) and *Nikolin v. Samsung*, No. CIV. A. 10-1456, 2010 WL 4116997 (D.N.J. Oct. 18, 2010) – are distinguishable. In *Miller* and *Nikolin*, unlike in the instant case, the terms were said to govern the website visitor *while on the site*. (emphasis added). *Miller*, 2015 WL 3965608, at *7. No such limitation exists in the Terms applicable to Williams. In addition, in *Nikolin*, the plaintiff not only neglected to raise the TCS in her complaint, but even in her opposition to the defendant's motion to dismiss, she did not allege that her claims arose under the website's terms. *Nikolin*, 2010 WL 4116997, at *4, n.3. In contrast, Williams did raise the TCS in her complaint and argues that her claims derive from the same nucleus of facts that is the subject of the TCS, purchases on SEA's website.

SEA also cites *Maloney v. Microsoft Corp.*, No. CIV. 09-2047, 2011 WL 5864064, at *5 (D.N.J. Nov. 21, 2011), Def. Br. at  15, n. 16, in an attempt to argue that the language in the express warranty that "'[t]his warranty give you specific rights, and you may also have other rights which vary from state

to state'" is an indication of SEA's intention that the law of consumers' individual states would apply to warranty claims. But in *Maloney*, in concluding that the choice-law-provision did not apply to the implied warranty, the court, first and foremost, gave weight to the unambiguous limitation on that provision: ''GOVERNING LAW. ..The laws of the State of Washington, U.S.A. will apply to this Limited Warranty'". The express warranty in the instant case, in stark contrast, does not have a governing law provision, and its reference to the possibility that rights may vary between states cannot be read as one. Instead, the TCS has a clear choice-of-provision, and the TCS pertains to purchases on SEA's website, of which Williams' unfortunate purchase was one. Therefore, SEA is bound to honor its selection of applicable law.

SEA cites *Bd. of Educ. of the Twp. of Cherry Hill, Camden Cnty. v. Hum. Res. Microsystems, Inc.*, No. CIV 09-5766 JBS/JS, 2010 WL 3882498, at *4 (D.N.J. Sep. 28, 2010), in support of its contention that a contractual choice-of-law provision cannot logically apply to an unjust enrichment claim because a claim for unjust enrichment provides a remedy when there is no contract. Def. Br. at 17, n. 18). In fact, *Cherry Hill* did entertain the possibility of a choice-of-law clause applying to unjust enrichment, stating that "the scope of choice-of-law clause does not *clearly* extend to an action for unjust enrichment, as it refers only to the law governing the Agreement." *Id*. *Cherry Hill* only concluded that "it would not

23

be logical to import a contractual choice-of-law clause into a circumstance in which Plaintiff seeks to establish that there is no contract." *Id*. In *Cherry Hill*, a determinative dispute was whether the contract that included the choice of law was altogether void. Williams, by contrast, is claiming that the TCS and the warranties are valid and enforceable. She offers the unjust enrichment claim only in the alternative as explained below in Section III.H.

Finally, *Cohen* and other cases cited by SEA[5] on Williams' alleged lack of standing to bring an action under New York law are inapposite because the issue considered therein, an issue still unsettled in this District,[6] is whether lead plaintiffs have standing to sue in states with which they have no connection, the concern being that allowing such cases to go forward would mean that plaintiffs could bring class action complaints under the laws of nearly every state "without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Cohen v. Subaru of Am., Inc.*, No. 120CV08442JHRAMD, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022) (internal citations omitted).

---

[5] Def. Br. at 17-18.

[6] "As Plaintiffs point out, there is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states." *Cohen*, 2022 WL 721307, at *6.

Notably, those cases did not involve any choice-of-law
provisions, let alone one selected by the defendant. In the
instant case, the choice-of-law provision drafted by SEA,
presumably because that is where SEA is incorporated and
conducts business, eliminates any cause for concern for
meritless, nation-wide actions against hapless defendants.
Having alleged a concrete, particularized, actual injury in
fact; a causal connection between the injury and SEA's action;
and that the injury will be redressed by a favorable decision,
Williams has established her standing. *See Cohen,* 2022 WL 721307
at *id*. (setting out the elements of standing).[7]

New York law, as selected by SEA, governs this action.[8]

**C.   <u>Williams states a claim for breach of the implied
warranty of merchantability.</u>**

To state a claim for breach of implied warranty under UCC
2-314, "a plaintiff must allege that goods are defective such
that they were not reasonably fit for the ordinary purpose for
which they were used, that the defect in the goods was a
substantial factor in causing the injury, and that the alleged
defect existed at the time the goods left the manufacturer or
entity in the line of distribution." *Fiuzzi v. Paragon Sporting
Goods Co. LLC*, 212 A.D.3d 431, 433, 181 N.Y.S.3d 544, 547 (2023)

---

[7] SEA's argument regarding New Jersey's choice-of-law principles
is similarly irrelevant. Def. Br. at 18, n. 19. The cases that
SEA cites analyze New Jersey's choice-of-law principles in the
*absence* of a contractual choice-of-law provision. Unlike in
those cases, Williams is merely following SEA's choice-of-law.
[8] In the alternative, Williams brings suit under Wisconsin law.

(citations omitted). To the extent the Court evaluates Williams' claims under Wisconsin law, "the UCC has been adopted almost uniformly by the various States and case law from other jurisdictions is helpful in applying Wisconsin's version of the Code." *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 956 (E.D. Wis. 1999), *aff'd*, 241 F.3d 915 (7th Cir. 2001).

Williams satisfies the pleading standard because she alleges that her laptop suffers from the Overhearing Defect, which has caused her laptop to regularly malfunction and rendered it useless from the outset, *e.g.*, FAC, ¶¶ 22-25, 31-33, 37; and that the Overheating Defect was present in the laptop when it was sold since the Overheating Defect is inherent to the design and materials used for the Class Laptops. FAC, ¶ 2.

SEA contends that the Court should dismiss Williams' implied warranty claim by incorrectly asserting that the defect in Williams' laptop "manifest[ed] after the warranty period expire[d]." Def. Br. at 19. However, even assuming the duration of the implied warranty is one year from sale, as SEA argues, Williams alleges that her Class Laptop began to "overheat[] intensely under ordinary use" approximately two months after she purchased the device. FAC, ¶¶ 19, 23.

None of the cases cited by SEA supports dismissal of an implied warranty claim, where the plaintiff asserts an implied warranty claim for malfunction during the warranty period. For example, SEA relies on *McCalley v. Samsung Elecs. Am., Inc.*, No. CIV. A. 07-2141 (JAG), 2008 WL 878402, at *1, 7 (D.N.J. Mar. 31,

2008), where the court based its denial of the implied warranty claim on the plaintiff's allegation that the product malfunction occurred *after* the duration of the implied warranty. SEA's reliance on *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW DEA, 2015 WL 3487756 (D.N.J. June 2, 2015) is misplaced for the same reason. *Stevenson*, at *13 (noting that he "admittedly drove his car [beyond the duration of the warranty] before the defect manifested"). Similarly, SEA's citation to *Taylor v. BMW of N. Am., LLC*, No. CV 20-1994 (KM)(JBC), 2021 WL 1186777 (D.N.J. Mar. 29, 2021) provides no support for its argument because in *Taylor*, the plaintiffs sought recovery under implied warranty for "possible damages arising in the future that w[ould] not be covered by the [express] warranty," after both the express and implied warranty expired. *Taylor* at *13.

SEA also asserts that "[a] warrantor is not liable just because a product fails." Def. Br. at 19., n. 20. Because SEA apparently attempts to blur the distinctions between an implied warranty claim and an express warranty claim by combining its arguments to dismiss both claims, it is not clear whether SEA intends its footnote 20 as an argument supporting dismissal of Williams' implied warranty claim. Regardless, SEA's citations in footnote 20 pertain exclusively to express warranty claims. *See Ecovacs Robotics Inc.*, No. 21-CV-07890-SI, 2022 WL 4087512, at *5 (N.D. Cal. Sept. 6, 2022) ("caselaw makes clear a breach of *express warranty* claim is not premised on defects alone") (emphasis added); *Butera v. Honeywell Int'l, Inc.*, No. CV 18-

27

13417-SDW-LDW, 2020 WL 64568, at *4 (D.N.J. Jan. 6, 2020) ("Holden does not plead facts sufficient to allege that Defendant breached its *express warranty* … there can be no breach where Holden did not provide Defendant with an opportunity to repair or replace the damaged water heater") (emphasis added).

**D.   Williams states a claim for SEA's breach of express warranty.**

SEA's primary argument in favor of dismissing Williams' claim for breach of express warranty is SEA's contention that Williams does not allege a breach within the warranty period and allegedly did not inform SEA that her laptop was overheating until after the duration of the express warranty expired.  Def. Br. at 20-21.

SEA disregards Williams' well-pleaded allegations that: (1) she experienced malfunctions due to the Overheating defect as early as two months after receiving her laptop from SEA, FAC, ¶ 23; (2) she informed SEA, during the duration of the express warranty, that her network driver had become completely inoperable, FAC, ¶ 25; (3) failure of the network driver is consistent with the effects of the Overheating Defect, FAC, ¶¶ 3, 25, 28; and (4) she sought repairs of the Overheating Defect in April 2022, during the warranty period, but SEA failed to cure the Overheating Defect. FAC, ¶¶ 26-30.  These allegations are sufficient to state a claim for breach of SEA's promise to

repair or replace Class Laptops found to be defective. FAC, ¶ 38.[9]

Instead of confronting Williams' allegation that the network driver malfunction that she experienced in April 2022 was a symptom of the Overheating Defect, SEA construes the malfunction to contend that SEA "evaluated and resolved" the issue. Def. Br. at 20. However, by doing so SEA is asking the Court to improperly resolve factual disputes in its favor. For example, acceptance of SEA's position requires the Court to improperly reject the plausible inference that the malfunction that Williams experienced in April 2022 was caused by the Overheating Defect. It also requires the Court to improperly reject the plausible inference that, in April 2022, SEA knew or should have known that the malfunction Williams presented to SEA was a consequence of the Overheating Defect. In contrast, Williams makes detailed allegations concerning SEA's knowledge of the Overhearing Defect. *See* FAC, ¶¶ 45-62. Those allegations bolster an inference in Williams' favor at the pleading stage that, in April 2022, SEA knew that the malfunction of Williams' laptop was not limited to a "Wi-Fi issue," Def. Br. at 20, and

---

[9] As alleged in Par. 33 of the FAC, Williams did make a second attempt to obtain a SEA repair, this time expressly naming the overheating defect. Whether SEA offered a free repair of the Overheating Defect, after the duration of the express warranty period, presents disputed factual questions - including whether, as Williams alleges, SEA revoked its repair offer, FAC, ¶ 33, and whether SEA was capable of repairing the Overheating Defect in October 2022 - that the Court should not resolve on a motion to dismiss.

that, even though Williams' laptop was "now connecting to the internet,", *id.* at 21, SEA did not reasonably believe it had truly repaired Williams' laptop.

SEA also seeks to dismiss Williams' express warranty claim by arguing that Williams does not allege reliance on the Limited Warranty at purchase. Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and *becomes part of the basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. Law § 2-313 (emphasis added); Wis. Stat. Ann. § 402.313 (same). Any requirement that a Williams allege "reliance" with respect to an express warranty is for purposes of showing that a statement by the seller was "part of the basis of the bargain." *See, e.g.*, *In re: Elk Cross Timbers Decking Mktg.*, No. 2577, 2015 WL 6467730, at *28 (D.N.J. Oct. 26, 2015) (citing cases discussing the role of reliance in an affirmation becoming part of the basis of the bargain to form a warranty).

Here, SEA admits (in fact, argues in its own favor) that "[t]here is no dispute that an express warranty was made here." Def. Br. at 38. SEA further argues that "Williams' conclusory unconscionability allegations fall well short of establishing that the Limited Warranty is invalid or unenforceable." *Id.* at 39, n. 38. SEA cannot have it both ways by arguing both that it is undisputed that there was a meeting of the minds on its

30

valid and enforceable Limited Warranty, but that Williams cannot enforce it.

Further, Williams sufficiently alleges her reliance on the Limited Warranty when purchasing her laptop. *See, e.g.*, FAC, ¶¶ 20, 38 (alleging that Williams reviewed and relied on materials on SEA's website informing her "that a written warranty from SEA would accompany the purchase of her Class Laptop," and that she reviewed the warranty booklet when it was delivered to her with the laptop). Similar allegations have been found sufficient at the pleading stage to allege reliance for the formation of a warranty. *See Livingston v. Trane Inc.*, No. CV176480ESMAH, 2019 WL 397982, at *14 (D.N.J. Jan. 31, 2019) (the plaintiff "in making her decision to purchase a system, researched the system and reviewed product information and reviewed and relied upon the statements contained in Defendant's marketing and warranty materials") (cleaned up).[10]

**E.   Williams states a claim under the Magnuson Moss Warranty Act ("MMWA").**

SEA argues that Williams' MMWA claim should be dismissed because she fails to state underlying state-law warranty claims. Def. Br. at 26. However, as discussed above, Williams has well-pleaded claims for breach of warranty.

---

[10] Authority relied on by SEA is inapposite. In none of the cases cited by SEA regarding reliance upon a warranty did the plaintiff, like Williams, see prior to purchase an online promise of warranty and read the written warranty in the box upon purchase.

31

SEA also contends that Williams' MMWA claim fails because her complaint does not include 100 plaintiffs, as required by 15 U.S.C. § 2310(d)(3)(C).   Def. Br. at 25-26.   However, SEA overlooks that the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Williams' MMWA claim, regardless of whether the Section 2310(d)(3) requirements are satisfied. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 589 n.12 (3d Cir. 1997) (diversity jurisdiction gives the district court "supplemental jurisdiction over the Magnuson-- Moss Act claim."); *see also In re Gen. Motors Air Conditioning Mtkg. and Sales Pracs. Litig.*, 568 F. Supp. 3d at 842 (E.D. Mich. 2021)(noting "[c]ourts have repeatedly held" similarly); *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 845 (7th Cir. 2014) ("supplemental jurisdiction over the Magnuson-Moss Act claim."); *Wetzel v. Am. Motors Corp.*, 693 F. Supp. 246, 248 (E.D. Pa. 1988) (Section 2310(d)(3) does not preclude pendent jurisdiction over MMWA claims); *Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) (same).

SEA's omission is notable, because SEA recently argued to the Third Circuit Court of Appeals that a federal district court can exercise supplemental jurisdiction over MMWA claims, despite a claim not satisfying the requirements Section 2310(d)(3).  *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183, n. 10 (3d Cir. 2023) (noting that supplemental jurisdiction allows a district court to exercise jurisdiction over related state claims). Here, SEA concedes that "MMWA claims are coextensive with underlying state law breach of warranty claims and are

32

therefore, dependent on, and derivative of, said state claims…
." Def. Br. at 26, n. 30 (quotations omitted).

### F. __Williams Alleges Sufficient New York Nexus Under NYGBL §§ 349 and 350.__

In addition to its assertion that the TCS, as a rule, do not apply to Williams' purchase, SEA argues that the NYGBL § 349 and § 350 do not apply to out-of-state transactions, even where the defendant is incorporated in New York and the choice-of-law provision points to New York law.  SEA is incorrect and a ruling in its favor would be inequitable.

As discussed above in Section III.B, it is clear that SEA, as drafter of the TCS, intended that New York law would apply to "all aspects whatsoever" of the Terms. It is equally clear that SEA did not qualify that selection to exclude the NYGBL.

It makes sense that SEA, having incorporated in New York and selling products nationwide (including New York) through its website, would choose the laws of its state of incorporation, and only of that one state, to apply to its nationwide online sales. In *Kruzits*, the Third Circuit upheld an Illinois selection choice-of-law clause drafted by an Illinois company that did business nationwide, finding that it was "understandable and reasonable that [the company would] include choice of law provisions in its financial agreements to ensure that those agreements are governed by the law of its principal place of business rather than the laws of each and every state

where its borrowers do business." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994).

Similarly, courts in the Second Circuit "have deemed one party's incorporation in the state of the parties' chosen law sufficient for the 'reasonable relationship test'" set forth by the Restatement of Conflict of Laws 187(a) as one of the two criteria used in a determination that a choice-of-law provision should be upheld. *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020). Indeed, the *EMA* court viewed with "skepticism" the arguments made by a Nevada corporation that the laws of its state of incorporation, the state selected in the choice-of-law clause, should not apply. *Id.* at 542.

Finally, even taking into consideration the limitations of the reach of the NYGBL, the contract's choice-of-law provision is a factor in determining the locus of the transaction, especially given the geographically nebulous nature of online sales. *See Beaton v. SpeedyPC Software*, No. 13-CV-08389, 2023 WL 2711416, at *7 (N.D. Ill. Mar. 30, 2023) (selection of Illinois law itself is a factor in establishing nexus between transaction and Illinois consumer fraud statute).

Significantly, none of the cases cited by SEA, except for *Cruz* - in support of its argument that the territorial requirements of NYGBL § 349 and § 350 are not met here – involves a New York selection-of-law clause or a defendant incorporating in New York, as is the case here. *Goshen* merely says that the deception must have occurred in New York for the transaction

34

being challenged to be deemed a New York transaction. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (2002). It does not address whether the facts here – that SEA is a New York corporation and the parties stipulated to New York law – suffice for a New York nexus. Tellingly, there was a New York selection-of-law clause in *Cruz* and, in fact, that *was* a factor in the decision therein that the non-New York plaintiff *did* have standing to sue under NYGBL § 349 and § 350. 720 F.3d at 124 (2d Cir. 2013).

Finally, SEA's assertion that Williams did not rely on SEA's misleading statements is misplaced and mistaken.  First, NYGBL § 349 and § 350 do not require a showing of reliance. *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015) (GBL is an objective standard).  Second, the FAC sets forth SEA's online performance representations of speed and battery life, FAC ¶¶ 21, 41 - 43, and Williams' reliance on them prior to her purchase of the Class Laptop, FAC ¶ 20.

### G.   <u>Williams States a Claim Under Wis. Stat. § 100.18(1).</u>

SEA argues that Williams fails to allege a misrepresentation as required under Wis. Stat. § 100.18(1).. Def. Br. at 28 – 29. *See, e.g.*, *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 169-70 (2004) ("A nondisclosure is not an 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1).").

What SEA neglects to mention, however, is the interplay between omissions and misrepresentations. "As recognized by the Wisconsin Court of Appeals, the misrepresentation/omission interplay presents two sides of the same coin." *Murillo v Kohl's Corp.,* 197 F. Supp. 3d 1119, 1127 (E.D. Wis. 2016). The existence of undisclosed facts - such as an Overheating Defect - may show that the affirmative representations - such as superior performance, long-lasting battery life, and a touch-screen - are untrue or misleading. In *Murillo*, the court linked the omissions – that the "regular" prices appearing on the defendant's goods were inaccurate –to the misrepresentation that defendant's goods were "regularly" priced in holding that the heart of the plaintiffs' WDTPA claim was an actionable affirmative representation. *Id*. Running throughout the FAC is Williams' grievance that she relied on SEA's assurances of a quality, well-performing laptop in her purchase only to discover an undisclosed Overheating Defect that rendered her laptop effectively useless. It is a misrepresentation to characterize a useless laptop as one with superior performance and functionality.

SEA argues, however, that SEA's performance and functionality statements are not actionable because they are mere puffery. Def. Br. at 29. However, when SEA's detailed claims regarding, for instance, battery life are juxtaposed with the failure to disclose the Overheating Defect, they amount to an affirmative misrepresentation that serves as the basis of a

WDTPA claim. In *Murillo,* the defendant argued that its statements regarding the regular and sales prices were puffery, but the Court rejected that line of thinking because "in the amended complaint, however, the plaintiffs make clear that the allegedly false 'regular' prices that Kohls advertises, and the comparison of those 'regular' prices to Kohls' 'sale' prices, comprise the core of the actionable misrepresentations in this case. . . plaintiffs' amended complaint alleges sufficient representations of fact made by Kohls' to support the WDTPA claim" *Id.* at 1127 – 28. *Agnesian Healthcare v Rtf Mfg. Co.,* 345 Wis. 2d 848, 826 N.W. 2d 123(2012)(undisclosed limitation "that the highest ambient temperature in which the units could be operated was 72°F, 74°F, and 75°F," demonstrated that technical manual, which omitted limitation, was misleading).

Here too, SEA's specific positive statements – with detailed promises as to the Class Laptops' speed and battery life (16-17 hours) -- were false in light of the undisclosed Overheating Defect. FAC, ¶¶ 42-43, together with SEA's silence regarding the Overheating Defect, which caused the battery to last "only two hours even after a full charge," FAC, ¶ 31, were actionable misrepresentations under the WDTPA.

### H.   **Williams Properly Claimed Unjust Enrichment.**

SEA first argues that Williams fails to allege SEA did anything unjust or an actionable defect. Def. Br. at 36.  As discussed, Williams alleges both the Overheating Defect and that SEA concealed the defect and misrepresented performance.  These

allegations state a claim for unjust enrichment. *Opheim v. Volkswagen Aktiengesellschaft,* No. CV. 20-02483 KM ESK, 2021 WL 2621689, at *18 (D.N.J. June 25, 2021)(finding unjust enrichment based on allegations of plausible misstatement).

SEA next argues that Williams' claim for unjust enrichment is barred because Williams has an adequate remedy at law. Def. Br. at 37. However, Fed. R. Civ. P. 8(a)(3) specifically permits a party to plead in the alternative. *See also Pauly v. Houlihan's Rests., Inc*., No. CIV 12-0025 JBS JS, 2012 WL 6652754, at *3 (D.N.J. Dec. 20, 2012) (plaintiff may plead alternatively express contract and quasi-contract). *Opheim v. Aktiengesellschaft*, 2021 WL 2621689, at *18 (D.N.J. June 25, 2021) ("Plaintiffs may plead unjust enrichment claims in the alternative to their claims at law."). Thus, SEA's related argument that Williams cannot pursue an unjust enrichment because it is duplicative of her consumer fraud and warranty claims, Def. Br. at 37-38, also fails.

Finally, SEA argues that the existence of its Limited Warranty requires dismissal of Williams' unjust enrichment claim. Def. Br. at 38-39. However, as noted above, SEA inconsistently argues that that its Limited Warranty did not became part of the basis of the bargain with Williams. Def. Br. at 25. So alternative pleading is appropriate. *See, e.g.*, *Francis v. Gen. Motors, LLC*, 2020 WL 7042935, at *23 (E.D. Mich. Nov. 30, 2020) (alternative pleading is proper where defendants "explicitly disclaim[] the availability of a contractual

remedy"); *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014) (permitting "alternative pleading" where there is a "bona fide dispute as to the existence of a contract"); *see also Opheim*, 2021 WL 2621689, at *18 (finding plaintiff may plead unjust enrichment in the alternative, despite express contract).

### I.  Williams has standing to pursue injunctive relief.

Finally, SEA argues that Williams lacks standing to seek injunctive relief.  Def. Br. at 39-40.  As to SEA's argument that equitable relief is unavailable when a plaintiff has an adequate remedy at law, *id.* at 39, "as a general matter, courts only dismiss claims not remedies at this early stage." *Opheim*, 2021 WL 2621689, at *15 (citing cases).

In addition, a threat of future harm is alleged because Williams continues to face the risk of future harm from excessive overheating in their Class Laptops. *See, e.g.*, *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 693 (E.D. Mich. 2020) (*quoting In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 597 (E.D. Mich. 2018) (plaintiffs adequately alleged "ongoing future harm based on their assertions that the class vehicles contain a serious safety defect rendering them unsafe to drive"); *see also Davis v. BMW of N. Am., LLC*, No. 19-CV-19650, 2022 WL 3646571, at *6 (D.N.J. Aug. 23, 2022) (allegation that defendant did not inform plaintiff of known defect "support[ed] a future harm and a viable basis for injunctive relief."). SEA's continued denial that the Overheating Defect

exists creates a substantial risk of both future physical and economic harm.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, this Court is respectfully requested to deny SEA's motion to dismiss in all respects.


Dated: August 28, 2023     /s/ Neil Grossman
                           **BRONSTEIN, GEWIRTZ & GROSSMAN,
                           LLC**
                           Neil Grossman
                           40 Calumet Avenue
                           Lake Hiawatha, New Jersey 07034
                           973.335.6409
                           973.335.3717
                           neil@bgandg.com
                           -and-
                           Peretz Bronstein
                           Yitzchak E. Soloveichik
                           Nava Listokin
                           60 East 42nd Street, Suite 4600
                           New York, New York 10165
                           212.697.8209
                           peretz@bgandg.com

                           **BERGER MONTAGUE PC**
                           Lawrence Deutsch
                           Jeffrey Osterwise
                           1818 Market Street
                           Philadelphia, PA 19103
                           215.875.3062
                           ldeutsch@bm.net
                           josterwise@bm.net

                           *Counsel for Plaintiff*