NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HALEY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>  Defendant. | No. 23cv989 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Haley Williams ("Williams") alleges that Defendant Samsung Electronics America, Inc. ("Samsung") knowingly sold laptops with an overheating defect, which limited the laptops' use and endangered users. D.E. 28 ("FAC" or "First Amended Complaint"). Samsung moves to dismiss Williams' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). D.E. 29. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT in part** and **DENY in part** Samsung's motion.[1]

---

[1] All dismissals are without prejudice. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) (quoting *New York v. Hill*, 528 U.S. 110, 118 (2000)) (Dismissal of a complaint with prejudice is a "'harsh remedy'" that "is [only] appropriate if amendment would be inequitable or futile."); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 165 (3d Cir. 2017 (dismissing claims with prejudice when the court lacks subject matter jurisdiction is improper).

I.  **BACKGROUND**[2]

    A.  **The Parties and the Defect**

This putative class action arises from a laptop overheating defect ("Defect") in the Samsung Galaxy Book, Samsung Galaxy Book Pro, Samsung Galaxy Book 2 Pro, and Samsung Galaxy Book Pro 360 ("Class Laptops"). FAC at 1. The Class Laptops were released between 2017 and April 1, 2022. *Id.* ¶ 40. Defendant Samsung is a New York corporation headquartered in New Jersey that designs, manufactures, markets, sells, and warrants the Class Laptops. *Id.* ¶¶ 1, 14. Plaintiff Williams, a Wisconsin resident, purchased a Class Laptop[3] on June 20, 2021, from Samsung's website. *Id.* ¶¶ 1, 13, 19.

The Defect is "inadequate ventilation result[ing] from the Class Laptops' shallow casing, insufficiently raised feet pads, and overcrowded internal hardware[, which] restrict[s] proper airflow and lead[s] to a buildup of heat in the devices." *Id.* ¶ 2. These issues are compounded by (1) "the materials used in the Construction of the Class Laptops, including the thermal paste and heat pipes, exhibit subpar thermal conductivity properties that impede heat transfer"; and (2) "the Class Laptops' cooling system, including its fans and heat sinks, [which] fails to effectively dissipate the generated heat, resulting in temperature spikes." *Id.*

Because of the Defect, the Class Laptops' central processing unit ("CPU") and graphics processing unit ("GPU") "throttle, leading to reduced processing power and slower performances." *Id.* ¶ 3. Additionally, the Defect "damages, sometimes irreparably, internal components, such as the motherboard, graphics card, hard drive, and[] . . . network driver." *Id.* Lastly, the Defect

---

[2] This section derives mainly from the FAC. On a motion to dismiss, the Court takes all well-pleaded facts as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] Samsung Galaxy Book Pro 360.

"poses a safety risk to users inasmuch as the high temperatures can lead to burns or cause the battery to malfunction and catch fire." *Id.*

Samsung "has long known" that the Defect is present in the Class Laptops. *Id.* ¶ 45. Samsung's knowledge is evidenced by the "customer complaints, product reviews, [and] warranty claims[]" about the Class Laptops. *Id.* Specifically:

> (1) an early 2017 Men's Journal online review that noted the Galaxy Book would get "very hot";
>
> (2) a March 17, 2017, Softpedia News review of the Samsung Galaxy Book to "[b]eware of overheating";
>
> (3) a June 14, 2021, product review of the Samsung Galaxy Book 360 where the author, after testing the product for over a month, noted the laptop would "overheat[] at times";
>
> (4) multiple posts or comments in Samsung's community forum where a user complained about their Class Laptop overheating and/or the fans noise; in many instances, Samsung, who monitored these posts and comments, responded with a link to troubleshooting instructions, and at times apologized for the "overheating" and/or "fan noise" issues;[4] and
>
> (5) Reddit threads where the Class Laptops overheating and/or loud fan issues were discussed.[5]

*Id.* ¶¶ 45-61 (cleaned up). Additionally, because Samsung previously recalled other Samsung products with overheating issues, statements about the Class Laptops overheating "would not go unnoticed by Samsung . . . ." *Id.* ¶ 62.

Despite the existence of and Samsung's knowledge of the Defect, Samsung made "public statements about the Class Laptops' speed, performance, battery life, thin profile, and touchscreen characteristics[]" and "withheld information [about the Defect] from consumers . . . ." *Id.* ¶ 41.

---

[4] Posted on August 14 and 15, 2021; April 14 and 26, 2022; May 10, 2022; June 28, 2022; and July 7, 2022. *See* FAC ¶¶ 50-56
[5] Posted on June 27, 2021; July 31, 2022; and September 27, 2022. *Id.* ¶¶ 59-61.

These statements include representations about the Class Laptops' (1) "lightning speeds[]" that enabled a user to "blaze through [their] work in record time, then binge-watch a show or game with virtually zero lag[]" and (2) varying long battery lives.[6]  *Id.* ¶¶ 42-43.  And though Samsung's website never mentioned the Defect or "related malfunctions[,]" the Class Laptops' warranty booklet had an appendix stating "if the product emits smoke or there is a burning smell, disconnect the power plug from the wall outlet and contact a Samsung Service Center immediately."  *Id.* ¶ 44 (quoting D.E. 28-11).[7]

"Samsung warranted the Class Laptops 'against manufacturing defects in materials and workmanship for a period of: One (1) Year Parts and Labor, Carry-In/Ship-In Services.'"  *Id.* ¶ 38 (quoting D.E. 28-10).[8]  The warranty also covered "manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of th[e] product[,]'" and Samsung would "'repair or replace' the product 'if found to be defective.'"  *Id.* (quoting D.E. 28-10).

### B. Williams' Experience with the Defect

Williams "received her Class Laptop on June 24, 2021, and began using it on a regular basis for ordinary computer tasks."  *Id.* ¶ 22.  However, "[s]oon after Williams commenced regular use of her Class Laptop, its temperature would rise significantly to the extent that she would have to turn it off."  *Id.*  For example, on August 16, 2021, Williams' Class Laptop "overheated intensely under ordinary use[]" such that she "was unable to user her Class Laptop in tablet mode" because of a "fear[] it would burn her."  *Id.* ¶ 23.  Even when using the Class Laptop in laptop mode,

---

[6] Galaxy Book Pro 360: 16-17 hours; Galaxy Book: 8 hours; Galaxy Book Pro: 15-16 hours; and Galaxy Book 2 Pro: 21 hours.  FAC ¶ 43.
[7] Williams attaches a copy of the appendix to the FAC.
[8] Williams attaches a copy of the warranty to the FAC.

4

Williams "would have to regularly power down the Class Laptop to keep it from overheating, [which] effectively prevent[ed] her from using the Class Laptop at all." *Id.*

Further, due to the Class Laptop overheating, its "fan ran continuously and loudly, [which] interfered with Williams' ordinary use of the Class Laptop[] and prevented her from using [it] in environments expected to remain quiet." *Id.* On one such occasion in November 2021, Williams "had to exit a Zoom session after only a few minutes due to her Class Laptop becoming too hot and the fan too loud." *Id.* ¶ 24.

These issues persisted, and "[i]n late March 2022, Williams' Class Laptop network driver failed." *Id.* ¶ 25. Initially, the problem appeared only "intermittently," and the Class Laptop would display a message indicating "no networks found." *Id.* Similarly, when running the Class Laptop's troubleshooter, Williams received a message "to the effect of[] 'no networks found' . . . ." *Id.* "Within a few days, the network driver had become entirely inoperable[,]" which is "consistent with the effects of the Overheating Defect[]" causing, among other issues, "complete performance failure . . . ." *Id.*

1. *Williams' first repair request*

Williams contacted Samsung on April 6, 2022, to inform them that her Class Laptop "would not connect to the internet despite her numerous attempts at troubleshooting." *Id.* Williams did not mention that her Class Laptop was overheating. *See id.* ¶¶ 26, 31. Samsung "generated a service ticket and instructed Williams to send her Class Laptop to Samsung's authorized service center in New Jersey for repairs, which she promptly did." *Id.* ¶ 26.

On April 7, 2022, Samsung's repair service returned the Class Laptop to Williams unrepaired because "no defects [were] found." *Id.* ¶ 28. Williams "immediately called the service center and informed them that she would not accept the return of a broken computer." *Id.* "Despite

5

the fact that[] . . . the . . . Defect caused the network driver failure, Samsung's repair service implied to Williams that the source of the malfunction in her Class Laptop was merely a cable that needed to be re-set." *Id.* Williams responded that "she hoped the 'issue doesn't come back.'" *Id.* ¶ 29 (quoting D.E. 28-3). After Williams received her Class Laptop, she "noticed that the bottom of the laptop showed signs of warping from overheating, the right-side corner near the trackpad had a dent protruding outward, and the tabs on the back vent had been broken." *Id.* ¶ 30.

2. *Williams' second repair request*

On October 4, 2022, Williams messaged Samsung via its online chat platform that (1) "her Class Laptop constantly overheated"; (2) her Class Laptop would "burn" her fingers; (3) "the fan was always running"; (4) "the Class Laptop smelled like it was melting"; (5) "if she charged the Class Laptop while using it, the overheating got worse"; (6) "the battery lasted only two hours even after a full charge"; and (7) "the Class Laptop had become worthless because she had to shut it down every two hours to do a full charge out of concern that it would catch fire." *Id.* ¶ 31. Williams also noted that "when she had previously sent in the Class Laptop for repairs, it had been returned incorrectly assembled[] . . . ." *Id.*

On October 7, 2022, a Samsung representative called Williams and "ask[ed] for more details regarding the overheating issue." *Id.* ¶ 33. Williams reiterated that the Class Laptop was "effectively rendered useless due to the constant overheating and related problems, such as the battery drain, the loud fan, and the melted plastic odor[]" and expressed concerns the Class Laptop would physically hurt her. *Id.* Williams also communicated that the overheating issue had been occurring for months, but "had gotten worse[,]" and that despite previously sending her Class Laptop in for repair, "the unit smell[ed] like it is melting." *Id.* Samsung issued a service ticket and told Williams to send the Class Laptop in for repair. *See id.* However, "Samsung cancelled

6

the service ticket it had issued before Williams had an opportunity to send in her laptop for repair." *Id.*

Around this time, Williams twice measured the temperature of her Class Laptop: (1) on October 7, 2022, with the front and back reaching 104.9 and 113.1 degrees Fahrenheit, respectively; and (2) on October 11, 2022, with the front and back reaching 112.24 and 123.4 degrees Fahrenheit, respectively.  *Id.* ¶¶ 34-35.

Williams' Class Laptop continues to "excessively overheat, give off a pungent smell of melting plastic, and suffer from negligible battery life and a flickering screen." *Id.* ¶ 37.  Despite Williams' continued "impeccable care" of her Class Laptop, as a result of the Defect, Williams cannot use her Class Laptop for its intended use or, frequently, at all.  *Id.* ¶¶ 32, 37.

### C. Procedural History

On February 20, 2023, Williams filed her initial complaint.  D.E. 1.  Williams amended her complaint on June 15, 2023, following Samsung's stipulation.  *See* D.E. 23; FAC.  The FAC brings eight claims under federal, New York, Wisconsin, and common law:

- Breach of express warranty pursuant to N.Y. U.C.C. § 2-313, or, alternatively, Wisc. Stat. § 402.313 (Counts One and Three);

- Breach of the implied warranty of merchantability pursuant to N.Y. U.C.C. § 2-314, or, alternatively, Wisc. Stat. § 402.314 (Counts Two and Four);

- Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (Count Five);

- Violation of New York's General Business Law ("NYGBL"), N.Y. Gen. Bus. Law §§ 349, 350, *et seq.* (Count Six), or, alternatively, violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wisc. Stat. § 100.18(1) (Count Seven); and

- Unjust enrichment (Count Eight).

FAC ¶¶ 89-220.

7

Samsung moves to dismiss the FAC.  D.E. 29-1 ("Mot.").  Williams opposes.  D.E. 30 ("Opp'n").  Samsung replies.  D.E. 31 ("Reply").

## II. LEGAL STANDARDS

### A. Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the [plaintiff]'s claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Fraud-based claims are "'subject to heightened specificity requirements'" pursuant to Federal Rule of Civil Procedure 9(b).  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 225 (D.N.J. 2020) (quoting *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005)).  For fraud-based claims, the plaintiff must state with particularity the circumstances

8

constituting fraud or mistake such that the defendant is "on notice of the precise misconduct with which they are charged." *Id.* (internal quotation marks omitted). Though the plaintiff need not plead "every material detail" and may allege the defendant's mental state generally, "some measure of substantiation" is required. *Id.* (internal quotation marks omitted). "At a minimum, [the] plaintiff 'must allege who made a misrepresentation to whom and the general content of the misrepresentation.'" *Id.* at 226 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

### B. Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may be raised at any time. *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *2 (D.N.J. Mar. 31, 2008).

A motion to dismiss for lack of standing is "properly brought pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1)." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (cleaned up). "Article III governs constitutional standing and limits [federal courts'] jurisdiction to actual cases or controversies." *Neal v. Volvo Cars of North Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (internal quotation marks omitted). A plaintiff can establish that their case presents a controversy, and, consequently, that they have standing, by demonstrating: (1) an injury in fact, (2) a sufficient causal connection between the injury claimed and the conduct complained of, and (3) a likelihood that a favorable decision would redress the party's complained-of injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### III. ANALYSIS

#### A. The MMWA Claims Fail for Lack of Subject Matter Jurisdiction Because There are Fewer Than 100 Named Plaintiffs

The MMWA vests jurisdiction "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to

9

paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1)(A)-(B). In the latter scenario, plaintiffs must satisfy three requirements: (1) the amount in controversy for each plaintiff exceeds $25; (2) the total amount in controversy exceeds $50,000; and (3) "if the action is brought as a class action, . . . the number of named plaintiffs is at least 100" ("Paragraph Three"). 15 U.S.C. § 2310(d)(3)(A)-(C).

Samsung argues that Williams' MMWA claim (Count Five) fails for lack of subject matter jurisdiction because there are less than 100 named plaintiffs. Mot. at 25-36. Williams does not dispute that there are less than 100 named plaintiffs,[9] but argues the Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367, "regardless of whether the [Paragraph Three] requirements are satisfied." Opp'n at 32 (first citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 589 n.12 (3d Cir. 1997); then citing *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 n.10 (3d Cir. 2023)).

The Court agrees with Samsung. The authority Williams cites does not support, and indeed cuts against, her argument. In *Suber*, the Third Circuit stated that if the plaintiff met the amount in controversy requirement to establish diversity jurisdiction, the district court could exercise supplemental jurisdiction over plaintiff's MMWA. *See* 104 F.3d at 588 n.12. Thus, this case is not applicable. And in *Rowland*, the Third Circuit enforced the 100 named plaintiff requirement and dismissed the MMWA claim, noting in dicta that the court has "suggested that a district court could[,]" in other instances, "exercise supplemental jurisdiction over an MMWA claim . . . ." 73 F.4th at 183 n.10 (citing *Suber*, 104 F.3d at 588 n.12).

Rather, courts consistently find that Paragraph Three illustrates Congress' desire to limit a federal court's ability to hear MMWA claims. *Id.* at 181. Thus, in a class action case, the Court

---

[9] She is the only one.

can exercise jurisdiction "*only if*" there are "at least 100" named plaintiffs. *Id.* (emphasis added); *see also* Paragraph Three. Because Williams is the sole named plaintiff in this class action, the Court lacks jurisdiction. *See Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (discussing the jurisdictional significance of the 100 named plaintiffs requirement); *Kavon v. BMW of North Am., LLC*, 605 F. Supp. 3d 622, 631 (D.N.J. 2022) ("[E]very court in this District to address *Floyd* has followed its reasoning.").

Accordingly, the Court will dismiss Williams' MMWA claim (Count Five).

### B.  It is Too Early to Address Injunctive Relief

Samsung argues that Williams lacks standing to seek injunctive relief because she has an adequate remedy at law and has not shown risk of a future injury. Mot. at 39-40. Williams disagrees, arguing it is too early for the Court to address the viability of injunctive relief. Opp'n at 39.

The Court agrees with Williams. "[A]s a general matter, courts only dismiss claims[,] not remedies[,] at this early stage." *See Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689, at *15 (D.N.J. June 25, 2021) (emphasis in original) (citing *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424-25 (D.N.J. 2015)). Were Williams claims for injunctive relief to survive, the Court would "still need to decide, *e.g.,* liability, before the viability of injunctive relief comes into play." *Id.*; *see also Riddell*, 121 F. Supp. 3d at 424 ("The court will consider appropriate relief only when liability is established.").

Accordingly, the Court will not dismiss Williams' remaining claims to the extent they request injunctive relief.

11

### C. Williams Cannot Invoke New York Law

Williams brings three claims under New York law: breach of express warranty, breach of the implied warranty of merchantability, and violation of the NYGBL (Counts One, Two, and Six). Williams' sole basis for invoking New York law rests in Section 11 of the Terms and Conditions of Sale, which apply to sales of Class Laptops on Samsung's website. FAC ¶ 9. Section 11 states that "[t]he formation, existence, construction, performance, validity and all aspects whatsoever of these Terms [and Conditions of Sale] will be governed by the law of the State of New York." *Id.* (citing https://www.samsung.com/us/terms-of-sale/). Samsung argues that the New York claims must be dismissed because the governing law provision in Section 11 does not apply to Williams' allegations. Mot. at 14-15. Williams opposes. Opp'n at 33.

The Court agrees with Samsung. To determine whether a choice of law provision in a contract governs a plaintiff's claims, courts must look to "the breadth of the provision." *Fagan v. Fischer*, 2019 WL 5587286, at *6 (D.N.J. Oct. 30, 2019). When a choice of law provision contains language that "the agreement 'will be governed by, and construed and enforced in accordance with, the laws of [a state,]" courts find the provision sufficiently narrowly drafted to encompass "only the underlying . . . agreement itself, and not necessarily the entire relationship between [the parties]." *Id.* (quoting *Black Box Corp. v. Markham*, 127 Fed. App'x 22, 25 (3d Cir. 2005)).

Williams argues that here, the choice of law provision is not narrowly drafted. Opp'n at 20. Williams argues that though the provision includes that the Terms and Conditions of Sale will be "*governed*" by New York law, it does not additionally state these terms will be "*construed and enforced in accordance with*" New York law. *See* Opp'n at 20 (emphasis added). However, courts find that nearly identical language is sufficiently narrow. For example, in *Miller v. Samsung Elecs. Am., Inc.*, the "Terms of Use" on Samsung's website provided that "[a]ny action related to these

Terms will be governed by New Jersey Law." 2015 WL 3965608, at *7 (D.N.J. June 29, 2015). At the motion to dismiss stage, the court rejected plaintiff's interpretation that this provision governed the court's choice of law analysis as "unreasonably broad[]" because the plaintiff's claim did not arise from the "Terms of Use."[10] *Id.*; *see also Nikolin v. Samsung Elecs. Am., Inc.*, 2010 WL 4116997, at *4 n.3 (D.N.J. Oct. 18, 2010) ("By its express language, the 'Terms of Use' 'govern [the website visitor] while on this site,' and in a subsection titled 'Violation of Terms of This Site,' they state that New Jersey law governs '[a]ny action related to these Terms.'"). Here, Williams' claims do not reference, or arise from, the Terms and Conditions of Sale.

Accordingly, the Court will dismiss Williams' claims under New York law (Counts One, Two, and Six).

### D. Williams Sufficiently Pleads a Defect

Samsung argues that Williams' remaining claims (Counts Three, Four, Seven, and Eight) fail because the FAC does not adequately allege a defect. Mot. at 10. Williams disagrees. Opp'n at 13-16.

The Court agrees with Williams. To adequately allege a defect, the FAC must meet Rule 8's liberal pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Rule 8 requires that a complaint provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

The FAC meets this standard by alleging "the role of the various components" involved in the Class Laptops' "inadequate cooling system . . . ." FAC ¶ 2. First, the FAC explains how

---

[10] The court noted that when a document is "integral" to a complaint, a court may consider it on a motion to dismiss, especially when the plaintiff cites to the document. *Id.* at *7 n.4. Likewise, here, the FAC explicitly relies on Samsung's Terms of Use as a basis for the New York claims. *See* FAC ¶ 9.

13

the Class Laptops build excessive heat: through "inadequate ventilation" caused by the Class Laptops' "shallow casing, insufficiently raised feet pads, and overcrowded internal hardware, [which] restrict[s] proper airflow . . . ." *Id.* Next, the FAC explains that the Class Laptops' fans and heat sinks fail to effectively dissipate the built-up heat. *Id.* Finally, the FAC explains that the Class Laptops are not constructed to withstand the excessive heat because the "thermal paste and heat pipes" are "subpar" as it pertains to thermal conductivity. *Id.*

Samsung argues that Williams needs to identify more details, such as

> (i) what the "casing" of any laptop is or how it is "shallow,"
> (ii) how high any "feet pads" are raised or why that is "insufficient,"
> (iii) what "internal hardware" is supposedly "overcrowded" or how,
> (iv) what "conductivity properties" of the "thermal paste and heat pipes" are "subpar," or
> (v) what "fans and heat sinks" exist or how they are ineffective.

Mot. at 12. Samsung also argues that as to these details, Williams does not distinguish between the four Class Laptops at issue. *Id.* at 13. In support, Samsung relies primarily on two *Wesley v. Samsung Elecs. Am., Inc.*, cases. *See id.* at 11-12 (first citing 2022 WL 16509541 (D.N.J. Oct. 28, 2022) ("*Wesley I*"); then citing 2023 WL 3496024 (D.N.J. May 17, 2023) ("*Wesley II*")). There, plaintiffs alleged that Samsung gas and electric ranges would not "maintain the set temperature" due to a defective "oven temperature sensor." *Wesley I*, at *1. The court twice granted the defendant's motions to dismiss based on the plaintiffs' failure to "plausibly assert what is actually defective" about the oven temperature sensor. *Id.* at *4; *Wesley II*, at *3-5. In so holding, the court highlighted that "there is split in authority as to the level of factual allegations necessary to plausibly plead a defect." *Wesley I*, at *4 (citing cases where courts find that "alleging the defect, along with the effects of the defect, is sufficient").

This Court applies the pleading standard liberally. *See Swierkiewicz*, 534 U.S. at 514. Williams identifies (1) the parts across the Class Laptops alleged to be defective, (2) how these

14

parts interplay in Class Laptops stages of overheating and damage, and (3) examples of how the defect allegedly manifests, including rendering the Class Laptops unusable. This is all Rule 8's liberal pleading standard requires. *See Milisits v. FCA US LLC*, 2021 WL 3145704, at *3 (E.D. Mich. July 26, 2021) (citing cases) (applying Rule 8 liberally in the vehicle context where plaintiffs identified the allegedly defective part and examples of how the defect allegedly manifests); *Weston v. Subaru of Am., Inc.*, 2022 WL 1718048, at *5 (D.N.J. May 26, 2022) (same). To the extent the FAC lacks specific details such as "what" casing was used, "what" internal hardware was overcrowded, etc., Williams is "not required to plead the mechanical details of an alleged defect in order to state a claim." *Milisits*, 2021 WL 3145704, at *3 (internal quotations omitted). Indeed, pre-discovery, the lack of these detailed allegations is "unsurprising, and not fatal . . . ." *Id.* (cleaned up).

Accordingly, the Court will not dismiss Williams' remaining claims (Counts Three, Four, Seven, and Eight) on this basis.

### E. The WDTPA Claim Fails for Lack of Particularity

Samsung argues that Williams' WDTPA claim is inadequately pleaded because the FAC does not identify an actual statement that *she* reviewed or relied on, *what* that particular statement said, *when* she saw that statement, or *how* that statement influenced her purchasing decision. Mot. at 30. Williams argues that the FAC contains multiple allegations that Williams "relied on [Samsung's] assurances of a quality, well-performing laptop . . . ." Opp'n at 36.

The Court agrees with Samsung. To plead a WDTPA claim, a plaintiff must plead (1) the defendant made a representation to the public with intent to induce an obligation, (2) this representation was false or misleading, and (3) this representation caused the plaintiff's pecuniary loss. *Miller v. Vonage Am., Inc.*, 2015 WL 59361, at *5 (E.D. Wis. Jan 5, 2015). "Because a claim

15

under the [W]DTPA sounds in fraud, it must be pleaded with particularity" under Rule 9(b).  *Id.* (citing cases).

As to Williams, the FAC alleges she "reviewed and relied upon marketing materials and advertisements concerning her Class Laptop that she viewed on the Samsung website prior to purchasing it." FAC ¶ 20.  These materials "touted the Class Laptops' powerful performance, thin design, and touchscreen capabilities" and "informed her that a written warranty from Samsung would accompany the purchase of her Class Laptop." *Id.*  Williams alleges these statements were false and misleading because they did not contain any disclosure relating to the Defect.  *Id.*

To the extent Williams' WDTPA claim is based on Samsung's written warranty not disclosing a defect, the claim fails because "a written warranty . . . is an express acknowledgment that the product may be defective . . . ." *Ball v. Sony Elecs. Inc.*, 2005 WL 2406145, at *3 (W.D. Wis. Sept. 28, 2005); *see also id.* (An "express promise to remedy defects in a product is not a representation that there are none, but acknowledge that there might be.").

Williams also fails to plead with particularity the content of the marketing materials and advertisements she relied on and when she reviewed those specific statements.  Rule 9(b) is not satisfied by only "broad assertions that [the d]efendant marketed its [product] of being superior quality" without "the context of the alleged statements[] and effect that any of the statements had on" the plaintiff.  *Henderson v. Volvo Cars of North Am., LLC*, 2010 WL 2925913, at *4 (D.N.J. July 21, 2010).  Though Williams does not have to formulaically allege the exact date, time, and place of the alleged fraud, she must "inject precision or some measure of substantiation" into her pleadings, *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), beyond a broad allegation that, at some point before purchasing her Class Laptop, she saw unspecified "marketing" and "advertisements."

16

Accordingly, the Court will dismiss Williams' WDTPA claim (Count Seven).

**F. The Express Warranty Claim Fails but the Implied Warranty Claim Survives**

*1. The FAC plausibly alleges the Defect manifested during the warranty period*

Samsung argues that Williams' remaining express warranty and implied warranty of merchantability claims under Wisconsin law (Counts Three and Four) fail because the FAC does not plausibly allege that the Defect manifested during the express and implied warranties' one-year period. Mot. at 19-20. In support, Samsung relies on the FAC's allegations that the first time Williams informed Samsung "that her laptop was allegedly overheating" was not until October 2022, "at which point *she* acknowledged that the device was 'out of warranty.'" *Id.* at 20 (emphasis added). Samsung argues that this admission, coupled with Williams' failure to send her laptop to Samsung, demonstrates that "Williams did not provide [Samsung] with an opportunity to repair the issue." *Id.* at 21. Williams argues that the FAC sufficiently pleads the Defect manifested during the one-year period because it alleges that "she experienced malfunctions due to the . . . [D]efect as early as two months after receiving her laptop" and that she attributes her April 2022 network driver failure as caused by the Defect. Opp'n at 28 (citing FAC ¶¶ 3, 25, 28). Thus, when Williams sought repair for the network driver failure in April 2022, Samsung had an opportunity to remedy the Defect and did not. *Id.*

The Court agrees with Williams. Samsung's argument relies heavily on its claim that Williams' statements to the Samsung repair team and the FAC's other allegations contradict one another. Mot. at 21 n.22. Specifically, Samsung argues that because Williams only sought help for an internet issue in April 2022, she necessarily did not seek a repair related to the Defect. *See id.* The Court disagrees. If, as Williams alleges, the Defect caused the network driver failure, then

17

when Williams sent her Class Laptop in, the Defect had manifested, and Samsung failed to repair Williams' issue.

Accordingly, the Court will not dismiss Williams' warranty claims on this basis. Further, because this is the only remaining argument for dismissal of Williams' implied warranty of merchantability claim, the Court will not dismiss that claim (Count Four).

2. *The express warranty claim fails to sufficiently plead reliance*

Samsung additionally argues that Williams' express warranty claim fails because she does not adequately plead specific facts as to her reliance, such as "what specific terms she relied on, nor how she relied on them." Mot. at 25; *see also Pagoudis v. Keidl*, 406 Wis. 2d 542, 554 (2023) (reliance is an element of express warranty). Specifically, the SAC alleges only that Williams "relied on the warranty." Mot. at 25 (citing FAC ¶¶ 38, 94). Williams disagrees, arguing that the warranty was a "basis of the bargain" and that the FAC adequately pleads reliance because she "reviewed" the Class Laptop's "booklet, including the [w]arranty," when she received her Class Laptop. Opp'n at 30-31.

The Court agrees with Samsung. As Samsung notes, in the warranty context, a plaintiff must assert more than just broad allegations that a statement became the "basis of the bargain." *See* Reply at 8 n.8 (citing *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 n.3 (3d Cir. 2017)); *Wesley v. Samsung Elecs. Am., Inc.*, 2021 WL 5771738, at *6 (D.N.J. Dec. 3, 2021) (plaintiffs allegations that the a warranty "formed the basis of the bargain" were insufficient without more). Williams does not allege "where the warranty appeared, . . . how [she] learned of the warranty, or any other details demonstrating that [she was] aware of the warranty prior to her purchase." *Wesley*, 2021 WL 5771738, at *6. Rather, Williams only broadly alleges that she "learned of" and "relied on" the warranty. *See* FAC ¶¶ 20, 38, 94.

Accordingly, the Court will dismiss Williams' remaining express warranty claim (Count Three).

### G.  The Unjust Enrichment Claim Will Survive

Samsung argues that Williams' unjust enrichment claim (Count Eight) fails for four reasons: (1) Williams has an adequate legal remedy, (2) it is duplicative of Williams' consumer fraud and warranty claims, (3) the existence of a contract generally bars recovery under an unjust enrichment theory, and (4) Williams fails to allege facts that Samsung did anything unjust or that there is an actionable defect.  Mot. at 36-39.  Williams disagrees, arguing again that it is too early to determine Williams' available remedies, that Williams may plead in the alternative, and that Williams adequately alleges an actionable defect.  *See* Opp'n at 37-39.

As for Samsung's first argument, as discussed above, the Court will not address remedies at the motion to dismiss stage.  *See supra* Section III(A).  Similarly, as for Samsung's second and third arguments, at this stage, Williams may plead her claims in the alternative.  *See Opheim*, 2021 WL 2621689, at *18 (citing *Gap Props., LLC v. Cairo*, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020)) (permitting plaintiffs to "plead unjust enrichment claims in the alternative to their claims at law" even when plaintiffs had "an express contract").

As for Samsung's fourth argument, as discussed above, Williams adequately alleges an actionable defect.  *See supra* Section III(D).  And Williams adequately alleges that Samsung retaining profits for a defective product would be "unjust."  FAC ¶ 219.

Accordingly, the Court will not dismiss Williams' unjust enrichment claim (Count Eight).

IV.  **CONCLUSION**

For the reasons stated herein, the Court will **GRANT in part** and **DENY in part** Samsung's motion to dismiss.  All dismissals are without prejudice.  In summary, the Court will:

- **DISMISS** Counts One and Two (breach of express warranty and implied warranty of merchantability under New York law);

- **DISMISS** Count Three (breach of express warranty under Wisconsin law);

- **DISMISS** Count Five (Magnuson-Moss Warranty Act);

- **DISMISS** Count Six (New York General Business Law);

- **DISMISS** Count Seven (Wisconsin Deceptive Trade Practices Act); and

- Counts Four (breach of implied warranty of merchantability under Wisconsin law) and Eight (unjust enrichment) will **SURVIVE**.

An appropriate Order accompanies this Opinion.  Williams will have 30 days from the entry of the accompanying Order to file an amended complaint.

Dated: March 28, 2024

_Evelyn Padin_
Evelyn Padin, U.S.D.J.