NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HALEY WILLIAMS, NICHOLAS RADWANSKI, SANDEEP TRISAL, AGUSTINE RIVERA, SAGAR GATFANE, ADRIANNA DE MADRIGUERA, JONATHAN FARIDIAN, ANDREA BERRY, AND EMMANUEL GARCIA, individually and on behalf of all others similarly situated, | No. 23cv989 (EP) (JRA) |
| Plaintiffs, | OPINION |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiffs Haley Williams, Nicholas Radwanski, Sandeep Trisal, Agustine Rivera, Sagar Gatfane, Adrianna de Madriguera, Jonathan Faridian, Andrea Berry, and Emmanuel Garcia seek to bring various state and common law claims on behalf of themselves individually and on behalf of other individuals in state-specific classes, against Defendant Samsung Electronics America, Inc. ("Samsung"). D.E. 59 ("Second Amended Complaint" or "SAC"). Plaintiffs allege that Samsung knowingly sold laptop computers with an overheating defect, which limited the laptops' performance and put users at risk. *See* SAC ¶¶ 1-7.

Samsung brings two motions. Samsung moves to compel arbitration of Plaintiff Jonathan Faridian's claims. D.E. 65-1[1] ("MTC" or "Motion to Compel"). Samsung also moves to dismiss

---

[1] Samsung filed its Notice of Motion to Compel Arbitration at D.E. 65.

Plaintiffs' Second Amended Complaint.  D.E. 66-1[2] ("MTD" or "Motion to Dismiss").  For the reasons below, the Court will **DENY** Samsung's Motion to Compel *without prejudice* and will **GRANT in part**, **DENY in part**, and **DEFER in part** Samsung's Motion to Dismiss.[3]

## I.    BACKGROUND[4]

### A.    Factual Background

Samsung Electronics America, Inc. is a corporation incorporated in New York and headquartered in New Jersey.  SAC ¶ 18.  Samsung designs, manufactures, sells, and warrants various computer models throughout the United States, including the Galaxy Book (the "Galaxy Book 1"), the Galaxy Book 3, the Galaxy Book 2 360, the Galaxy Book Pro, the Galaxy Book 2 Pro, and the Galaxy Book Pro 360 (collectively, the "Galaxy Books").  *Id.* ¶¶ 3, 18.  With respect to Galaxy Book 3 devices in particular, Samsung represents that all that are sold in the United States are packaged with an external label notifying users that opening or using the device constituted assent to Samsung's Arbitration Agreement.  D.E. 65-3 ("Waitley MTC Decl.") ¶¶ 12-14.

According to Plaintiffs, the Galaxy Books contained a defect that caused the Galaxy Books to "excessively overheat when performing basic laptop functions" (the "Overheating Defect").  SAC ¶ 2.   Plaintiffs believe the Overheating Defect derives from "inadequate ventilation,

---

[2] Samsung filed its Notice of Motion to Dismiss at D.E. 66.

[3] All dismissals are without prejudice.  *See Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) (quoting *New York v. Hill*, 528 U.S. 110, 118 (2000)) (describing dismissal with prejudice as a "harsh remedy" that is only "appropriate if amendment would be inequitable or futile").

[4] For purposes of Samsung's Motion to Dismiss, the Court accepts the factual allegations of the First Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

insufficient heat dissipation, and poor thermal conductivity." *Id.* As a result of the Overheating Defect, Plaintiffs allege that the Galaxy Books suffer from throttling computer processing units and graphics processing units, reduced processing power, slower performance, disturbing fan noise, and irreparable damage to internal components like the Galaxy Books' motherboard, graphics card, hard drive, and network driver. *Id.* ¶ 3. In addition, Plaintiffs claim that the Overheating Defect poses a safety risk because the high temperatures could cause burns or induce ignition of the battery. *Id.*

Plaintiffs claim that Samsung knew about this Overheating Defect and concealed it. *Id.* ¶ 4. According to Plaintiffs, Samsung knowingly failed to disclose the dangers and drawbacks of the Overheating Defect and instead misrepresented the Galaxy Books as "an excellent solution for consumers seeking powerful, portable performance." *Id.* Plaintiffs also allege that despite Samsung's knowledge of the Overheating Defect, Samsung has refused to repair or replace the Galaxy Books, and has therefore exposed Plaintiffs to danger and deprived them of the use of their Galaxy Books. *Id.* ¶ 5.

Plaintiffs are individuals from various states who purchased a Galaxy Book that suffered from the purported Overheating Defect. *See id.* ¶¶ 23-90.

### 1.    Haley Williams

Haley Williams purchased a Galaxy Book Pro 360 online from Samsung's website on June 20, 2021, while in Wisconsin. *Id.* ¶ 23; *see id.* ¶ 9. Williams seeks to bring claims on behalf of all persons who purchased Galaxy Books in Wisconsin. *Id.* ¶ 130.

Williams alleges that her Galaxy Book began intensely overheating under ordinary use soon after she purchased it. *Id.* ¶¶ 25-26. The fan on Williams's Galaxy Book would run loudly and continuously and Williams would regularly power down her Galaxy Book to avoid the

3

overheating.  *Id.* ¶ 26.  These issues  "effectively prevent[ed] her from using the [Galaxy Book] at all."  *Id.*  On November 2021, Williams exited a videoconference because the fan on her Galaxy Book was so loud.  *Id.* ¶ 27.  In March 2022, the network driver on Williams's Galaxy Book stopped operating due to apparent heat damage.  *Id.* ¶ 28.

Williams contacted Samsung on April 6, 2022 to remedy the failure of the Galaxy Book's network driver.  Samsung had Williams bring her Galaxy Book in for repairs but Williams alleges that Samsung did not repair the Overheating Defect.  *Id.* ¶¶ 29-30.  Instead, Samsung ostensibly marked the repair as "completed" after finding no apparent defects and returned the Galaxy Book to Williams.  *Id.* ¶ 31.  Upon return of the Galaxy Book, Williams noticed that the case had warped, the trackpad's corner was dented, and the tabs on the Galaxy Book's backside had broken.  *Id.* ¶ 33.

Williams then contacted Samsung again on October 4, 2022 to complain that the Galaxy Book constantly overheated, got so hot it burned her, smelled of melting plastic, continuously ran the fan, had an abbreviated battery life, and became even hotter while charging.  *Id.* ¶ 34.  Williams further complained that Samsung had incorrectly assembled her Galaxy Book upon the last repair service it provided.  *Id.*  Samsung then followed up with Williams on October 7, 2022 to obtain more details.  *Id.* ¶ 36.  Williams explained that the overheating had been going on for months, described the symptoms, and expressed concerns that the heat would physically injure her.  *Id.*  Samsung declined to repair Williams's Galaxy Book.  *Id.* ¶ 36.  Willaims alleges she is unable to use the Galaxy Book because of the excessive heat it generates, its poor battery life, a flickering screen, and because it smells of burning plastic.  *Id.* ¶ 40.

4

2.    *Nicholas Radwanski*

Nicholas Radwanski purchased a Galaxy Book 2 360 from a BestBuy store in Indiana on June 29, 2022. *Id.* ¶ 41. Radwanski seeks to bring claims on behalf of all persons who purchased Galaxy Books in Indiana. *Id.* ¶ 131.

Radwanski alleges that about two weeks after purchase, his Galaxy Book would heat up so much that he would have to power down and reboot it. *Id.* ¶ 43. Radwanski claims that his constant need to power down and reboot prevented him from using his Galaxy Book. *Id.* ¶¶ 43-44. When it did run, the Galaxy Book would nevertheless heat up so much that he would worry it would burn him. *Id.* The fan would also run excessively loudly. *Id.* Radwanski further claims that, like Williams's Galaxy Book, Radwanski's Galaxy Book began to smell and face network-connectivity issues. *Id.* ¶¶ 45-46.

Radwanski did not contact Samsung about his Galaxy Book. *Id.* ¶ 47. He contends he stopped using the Galaxy Book after about six months due to its temperature, its smell, its diminished battery life, and because of safety concerns. *Id.* ¶ 48.

3.    *Andrea Berry*

Andrea Berry is a citizen of Texas who purchased a Galaxy Book Pro 360 online from Samsung's website on October 10, 2021. *Id.* ¶ 82. Berry seeks to bring claims on behalf of all persons who purchased Galaxy Books in Texas. *Id.* ¶¶ 16, 136.

Berry claims that within one year of purchase, her Galaxy Book would become uncomfortably hot, the screen would flicker, the touchpad would malfunctioned, and the fan would make excessive noise. *Id.* ¶ 84. As a result of these issues, Berry cannot keep her Galaxy Book in her lap, nor can she use it for extended periods of time. *Id.*; *see id.* ¶ 85. Berry does not allege having contacted Samsung.

5

### 4.    *Sandeep Trisal*

Sandeep Trisal is a citizen of New York who purchased a Galaxy Pro 360 on June 4, 2021, and a Galaxy Book 2 Pro 360 on March 18, 2022. *Id.* ¶¶ 11, 49-50. Trisal purchased both Galaxy Books online from Samsung's website. *Id.* Trisal seeks to bring claims on behalf of all persons who purchased Galaxy Books in New York. *Id.* ¶ 132.

Both of Trisal's Galaxy Books initially worked fine, but in December 2022, they began excessively overheating to the point Trisal worried they would burn him. *Id.* ¶ 52. The Galaxy Books both malfunctioned while running basic programs, froze entirely, became unresponsive, and faced network connectivity issues. *Id.* ¶ 53. These issues forced Trisal to power down, reboot, and wait for his Galaxy Books to cool off before restarting them. *Id.*

In May 2023, Trisal contacted Samsung regarding the overheating issues. *Id.* ¶ 54. Samsung informed Trisal that the warranties covering the Galaxy Books did not encompass the Overheating Defect, but Samsung nevertheless promised to follow up with alternative support. *Id.* Samsung, however, did not, and Trisal did not reach back out again. *Id.*

Trisal's Galaxy Books continue to experience interruptions in operability. *Id.* ¶ 55. According to Trisal, he is able to only use his Galaxy Books intermittently. *Id.*

### 5.    *Adrianna de Madriguera*

Adrianna de Madriguera purchased a Galaxy Book 1 from a BestBuy store in New York on September 10, 2021. *Id.* ¶ 66. Like Trisal, de Madriguera seeks to bring claims on behalf of all persons who purchased Galaxy Books in New York. *Id.* ¶ 132.

De Madiguera alleges that within the first year of her purchase, she experienced overheating and had to place her laptop on ventilated surfaces to improve airflow. *Id.* ¶ 68. In

6

December 2022, de Madriguera's Galaxy Book became so hot that she dropped it, and the screen cracked. *Id.* ¶¶ 69-70.

De Madriguera contacted laptop repair shops, but the quoted costs exceeded the cost of her Galaxy Book. *Id.* ¶ 70.  On an undisclosed date, de Madriguera contacted Samsung at a pop-up shop but staff there directed de Madriguera to contact a Samsung store. *Id.* ¶ 71.  It is not clear whether de Madriguera contacted Samsung staff outside of the pop-up store. *Id.*  Samsung did not follow up with her after the contact she made at the pop-up shop. *Id.*

De Madriguera no longer uses her Galaxy Book because it overheats excessively, freezes, and is generally unresponsive. *Id.* ¶ 72.

6.    *Augustine Rivera*

Augustine Rivera is a citizen of Pennsylvania who purchased a Galaxy Book Pro 360 online from Samsung's website on July 23, 2021. *Id.* ¶¶ 12, 56.   Rivera seeks to bring claims on behalf of all persons who purchased Galaxy Books in Pennsylvania. *See id.* ¶ 133.

Rivera alleges that within one week of purchase, his Galaxy Book would heat to uncomfortable temperatures, the fan would made excessive noise, and the Galaxy Book would sometimes smell burnt. *Id.* ¶ 58.  According to Rivera, the Overheating Defect caused performance and battery issues that have rendered his Galaxy Book no longer usable. *Id.* ¶¶ 59-60.  Rivera does not allege having contacted Samsung.

7.    *Sagar Gatfane*

Sagar Gatfane purchased a Galaxy Book Pro 360 from a BestBuy store in North Carolina on November 19, 2021. *Id.* ¶ 61.  Gatfane seeks to bring claims on behalf of all persons who purchased Galaxy Books in North Carolina. *Id.* ¶ 134.

Gatfane contends that at some point, his Galaxy Book began randomly restarting and overheating so much that he could no longer use it on his lap.  *Id.* ¶¶ 62-63.  Gatfane contacted Samsung in April or May 2022 but Samsung told Gatfane to keep installing the latest software updates.  *Id.* ¶ 64.  Gatfane is under the impression that Samsung believed that the software updates would cure the heating issues.  *Id.*  In 2023, Samsung directed Gatfane to contact Microsoft and Gatfane found himself in a loop between both companies trying to obtain support.  *Id.*

Gatfane has since ceased using his Galaxy Book because the heating became worse, the operating system does not boot, and the laptop's hardware appears damaged.  *Id.* ¶ 65.

> 8.    *Jonathan Faridian*

Jonathan Faridian is a citizen of California who purchased a Galaxy Book 3[5] online from Samsung's website on February 22, 2023.  *Id.* ¶¶ 15, 73.  Faridian seeks to bring claims on behalf of all persons who purchased Galaxy Books in California.  *Id.* ¶ 135.

According to Faridian, his Galaxy Book began excessively overheating within two months of purchase, making it uncomfortable to use and "potentially unsafe."  *Id.* ¶ 77.  Faridian claims that these problems hurt his ability to focus while studying.  *Id.*  The fingerprint scanner and security software of Faridian's Galaxy Book do not function, the fan runs excessively loudly, and the Galaxy Book crashes unexpectedly.  *Id.* ¶ 79.

Faridian contacted Samsung in June 2023 regarding the Overheating Defect, but Samsung did not provide a solution.  *Id.* ¶ 80.  Faridian uses his Galaxy Book intermittently because it overheats, freezes, and is generally unresponsive.  *Id.* ¶ 81.

---

[5] Samsung avers that all Galaxy Book 3 devices were sold with packaging affixed with an external label, and which included a brochure, notifying users that opening or using the device constituted assent to Samsung's Arbitration Agreement.  D.E. 65-3 ("Waitley MTC Decl.") ¶¶ 12-14.

9.    *Emmanuel Garcia*

Emmanuel Garcia is a citizen of Florida who purchased a Galaxy Book Pro online from Samsung's website on May 5, 2021.  *Id.* ¶¶ 17, 86.  Garcia seeks to bring claims on behalf of all persons who purchased Galaxy Books in Florida.  *Id.* ¶¶ 17, 137.

Garcia contends that within a few weeks after purchase, his Galaxy Book began getting uncomfortably hot, the fan ran excessively loudly, the screen would flicker and turn off, and the laptop would freeze and become inoperable.  *Id.* ¶ 88.  Garcia represents that because of the Overheating Defect, his Galaxy Book continues to exhibit these symptoms.  *Id.* ¶ 90.  Garcia does not allege contacting Samsung.  *See id.* ¶¶ 86-90.

**B.    Procedural History**

On February 20, 2023, Williams filed an initial complaint.  D.E. 1.  Williams amended her complaint on June 15, 2023, following Samsung's stipulation permitting her to do so.  *See* D.Es. 23 & 29.  Williams brought claims for (1) breach of express warranty pursuant to N.Y. U.C.C. § 2-313, or alternatively pursuant to Wisc. Stat. § 402.313; (2) breach of implied warranty pursuant to N.Y. U.C.C. § 2-314, or alternatively Wisc. Stat. § 402.3314; (3) a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; (4) violations of consumer fraud statutes under New York law, or alternatively, under Wisconsin law; and (5) a claim for unjust enrichment.  D.E. 29 ¶¶ 89-220.

This Court dismissed (1) Williams's Magnuson-Moss Warranty Act claim for lack of subject matter jurisdiction; (2) Williams's New York claims because the choice of law provision— specifying New York—included within Samsung's terms and conditions of sales did not apply to Williams's allegations; (3) Williams's consumer fraud claim because Williams failed to identify a misrepresentation made by Samsung; and (4) Williams's breach of express warranty claim because

9

Williams failed to plead her plausible reliance on the terms of the warranty. *See generally* D.Es. 33 ("Prior Opinion") & 34. The Court permitted Williams's breach of implied warranty and unjust enrichment claims to proceed because Williams adequately pled that the Overheating Defect manifested within the warranty period and because Williams was permitted to plead unjust enrichment in the alternative to her breach of implied warranty claim. Prior Opinion at 17-19; *see* D.E. 34.

Williams then filed an amended complaint on June 7, 2024, adding new named plaintiffs. D.E. 40. After the parties filed pre-motion letters and this Court held a pre-motion conference, this Court struck Plaintiffs' amended complaint and permitted Plaintiffs to file a new amended complaint. *See* D.Es. 41, 42, 47. Plaintiffs then filed their Second Amended Complaint on May 21, 2025 naming as new Plaintiffs: Nicholas Radwanski, Sandeep Trisal, Agustine Rivera, Sagar Gatfane, Adrianna de Madriguera, Jonathan Faridian, Andrea Berry, and Emmanuel Garcia. SAC ¶¶ 9-17. After the parties filed a new round of pre-motion letters, this Court permitted Samsung to proceed with a motion to dismiss the Second Amended Complaint and a motion to compel arbitration of Plaintiff Jonathan Faridian's claims (based on his Galaxy Book 3 purchase). *See* D.Es. 62-64.

Samsung then filed its Motion to Dismiss and its Motion to Compel. MTD; MTC. Plaintiffs oppose Samsung's Motion to Dismiss, D.E. 68 ("MTD Opp'n"), and Samsung's Motion to Compel, D.E. 69 ("MTC Opp'n"). Samsung replies in support of its Motion to Dismiss, D.E. 73 ("MTD Reply"), and in support of its Motion to Compel, D.E. 72 ("MTC Reply").

**C.     Counts**

Plaintiffs bring the following nineteen counts in their Second Amended Complaint:

- Count I: on behalf of Williams and all other persons who purchased a Galaxy Book in Wisconsin, breach of implied warranties of merchantability and fitness under Wisc. Stat. § 402.314, SAC ¶¶ 149-64;

- Count II: on behalf of Radwanski and all other persons who purchased a Galaxy Book in Indiana, breach of implied warranties of merchantability and fitness under Indiana Code § 26-1-2-314, *id.* ¶¶ 165-80;

- Count III: on behalf of Trisal and all other persons who purchased a Galaxy Book in New York, breach of implied warranty of merchantability under U.C.C. § 2-314, *id.* ¶¶ 181-96;

- Count IV: on behalf of Trisal and de Madriguera and all other persons who purchased a Galaxy Book in New York, a violation of the New York General Business Law, N.Y. Gen. Bus. Law §§ 349 & 350 ("NYGBL"), *id.* ¶¶ 197-218;

- Count V: on behalf of Rivera and all other persons who purchased a Galaxy Book in Pennsylvania, breach of implied warranties of merchantability and fitness under 13 Pa. Code Rule § 231, *id.* ¶¶ 219-34;

- Count VI: on behalf of Rivera and all other persons who purchased a Galaxy Book in Pennsylvania, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 ("UTPCPL"), *id.* ¶¶ 235-52;

- Count VII: on behalf of Gatfane and all other persons who purchased a Galaxy Book in North Carolina, breach of implied warranties of merchantability and fitness under N.C. Gen. Stat. § 25-2-314, *id.* ¶¶ 253-68;

11

- Count VIII: on behalf of Gatfane and all other persons who purchased a Galaxy Book in North Carolina, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"), *id.* ¶¶ 269-83;

- Count IX: on behalf of Faridian and all other persons who purchased a Galaxy Book in California, breach of implied warranties of merchantability and fitness under Cal. Civ. Code §§ 1791.1 & 1792, *id.* ¶¶ 284-301;

- Count X: on behalf of Faridian and all other persons who purchased a Galaxy Book in California, violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *id.* ¶¶ 302-16;

- Count XI: on behalf of Faridian and all other persons who purchased a Galaxy Book in California, violation of Cal. Bus. & Prof. Code § 17200, *id.* ¶¶ 317-31;

- Count XII: on behalf of Berry and all other persons who purchased a Galaxy Book in Texas, breach of implied warranties of merchantability and fitness under Texas Bus. & Com. Code § 2.314, *id.* ¶¶ 332-45;

- Count XIII: on behalf of Berry and all other persons who purchased a Galaxy Book in Texas, violation of the Texas Deceptive Trade Practices Consumer Protection Act, Texas Bus. & Com. Code § 17.41 ("TDTPCA"), *id.* ¶¶ 346-63;

- Count XIV: on behalf of Garcia and all other persons who purchases a Galaxy Book in Florida, violation of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201-.213, *id.* ¶¶ 364-71; and

- Count XV: on behalf of all Plaintiffs and all other persons who purchased a Galaxy Book in Wisconsin, Indiana, New York, Pennsylvania, North Carolina, California, Texas, and Florida, unjust enrichment, *id.* ¶¶ 372-76.

**II.      SAMSUNG'S MOTION TO COMPEL ARBITRATION**

**A.      Legal Standard**

*1.      Formation of a Contract*

To determine whether a valid agreement to arbitrate exists, courts look to state contract law. *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019).  Under New Jersey law,[6] "[a] party who assents to a contract . . . is bound by all the terms of a contract, even those terms that the party did not read or specifically discuss." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017).  Absent fraud or misconduct in the creation or presentation of the contract, the party that signed an arbitration agreement is bound by it.  *Stelluti v. Casapenn Enters., LLC*, 203 N.J. 286, 305 (2010).

*2.      Compelling Arbitration*

The Federal Arbitration Act ("FAA") "enables judicial enforcement of a contract to arbitrate after the court hears the parties" and "is satisfied that the making of the agreement to arbitrate . . . is not in issue . . . ." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024).  Before ordering arbitration, however, a court must conduct a two-step inquiry and decide: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  To determine whether a valid agreement to arbitrate exists depends upon the application

---

[6] Here, the parties do not dispute that New Jersey law applies or that there is a conflict between New Jersey and California law.  Both parties here rely on New Jersey state court cases.  *See, e.g.*, MTC at 3, 14; MTC Opp'n at 1.  It appearing that the parties do not dispute that New Jersey law applies, the Court applies New Jersey substantive law.  *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 533 (3d Cir. 2009) (applying Pennsylvania substantive law in part because the parties relied on Pennsylvania state law).

of "ordinary state-law principles that govern the formation of contracts." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017).

Before making the above determination, however, courts must first address whether to conduct the two-step inquiry under a Rule 12(b)(6) motion to dismiss standard or under a Rule 56 summary judgment standard. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). If the complaint and its supporting documents do not make clear that there is an agreement to arbitrate, or if a party has responded to a motion to compel arbitration with facts sufficient to place the agreement to arbitrate at issue, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* After limited discovery, courts may consider a renewed motion to compel arbitration and may then apply the Rule 56 summary judgment standard. *Id.*

**B.    Discussion**

Samsung seeks to compel Faridian to arbitrate. At issue therefore is (1) whether a valid agreement to arbitrate exists between Faridian and Samsung and (2) whether the dispute Faridian brings falls within the scope of that arbitration agreement. *Trippe Mfg.*, 401 F.3d at 532. Because the parties do not dispute that the arbitration agreement at issue here ("Arbitration Agreement") delegates the question of arbitrability to the arbitrator, the second question, *i.e.*, whether Faridian's dispute falls within the scope of the Arbitration Agreement, is not a question for this Court to decide. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995); *see also* MTC at 13-14; *see generally* MTC Opp'n. Therefore, only the existence of an agreement to arbitrate is in controversy. The Court focuses on that inquiry below and concludes that an inquiry into the case's factual issues will be necessary to evaluate whether Faridian is subject to the Arbitration Agreement.

14

For the reasons set forth below, the Court will **DENY** Samsung's Motion to Compel *without prejudice*. Samsung may bring a renewed motion to compel arbitration if further development of the record renders Faridian's evidence incredible. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Peronance v. City of Philadelphia*, No. 23-3943, 2024 WL 1660543, at *10 (E.D. Pa. Apr. 16, 2024) (collecting cases granting summary judgment when a self-serving affidavit is "impeached by a well-supported showing to the contrary").

### 1.    *The Rule 56 standard for summary judgment applies*

As noted above, when resolving a motion to compel arbitration, courts must determine what standard of review applies: the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard under Federal Rule of Civil Procedure 56. *Guidoitti*, 716 F.3d at 772. The summary judgment standard under Rule 56 applies when the complaint does not make the existence of an agreement to arbitrate clear and the party opposing arbitration "has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement . . . ." *Id.* at 774 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980)); *see Young*, 119 F. 4th at 319.

Here, Faridian provides a declaration stating that he never received the external label and pamphlet that Samsung avers he must have. D.E. 69-1 ("Faridian Decl.") ¶¶ 4-7. Faridian also relies on YouTube videos demonstrating the unboxing of Canadian Samsung computers, which contain no labels or pamphlets. *See* D.Es. 65-4, Ex. A & 65-9, Ex. F. Those YouTube videos, however, demonstrate computers sold by a different entity (Samsung Electronics Canada) than the

15

Samsung entity named as a Defendant here (Samsung Electronics America).  *See* SAC ¶ 18. Accordingly, they do not appear to bear on the issue here: whether Samsung (Electronics America) sold Faridian a device that provided inquiry notice of the Arbitration Agreement.  Despite the apparent irrelevance of these YouTube videos, Faridian's declaration raises, at this point in the litigation, a non-frivolous challenge.  Therefore, as the parties agree is appropriate, MTC Opp'n at 7; MTC Reply at 10, the Court will apply a summary judgment standard.

### 2.    *The summary judgment standard*

Under the summary judgment standard, the movant bears the initial burden of demonstrating that the nonmovant cannot establish one or more elements of its case.  *Id.* at 772-73.  The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).  Once the movant meets its burden, the burden then shifts to the nonmovant to counter with specific facts showing that there is a genuine issue for trial. *Guidotti*, 716 F.3d at 772-73 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).  The Court must then view the evidence in the light most favorable to the non-moving party to determine whether a genuine dispute of fact exists.  *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

The Third Circuit, however, has cautioned that when "conclusory, self-serving affidavits" are incompatible with record evidence, they "are insufficient to withstand a motion for summary judgment."  *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

16

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). For example, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. A party must do more than raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Applying this guidance, courts in the Third Circuit regularly grant summary judgment when a self-serving affidavit is "impeached by a well-supported showing to the contrary." *Peronance*, 2024 WL 1660543, at *10 (collecting cases).

> 3.    *Faridian raises a genuine dispute of material fact regarding his assent to the Arbitration Agreement*

A party may be "compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common law principles of agency and contract support such an obligation on his or her part." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004). The parties do not explain whether New Jersey law or California law should control the common law inquiry into whether Faridian is bound by the Arbitration Agreement. Under either State's law, however, plaintiffs are bound by an agreement that they have received inquiry notice of. *See Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 (3d Cir. 2017) (interpreting *Hoffman v. Supplements Togo Management, LLC*, 419 N.J. Super. 596 (App. Div. 2011) to recognize that "California and New Jersey have identical reasonable notice requirements"); *Santana v. SmileDirectClub, LLC*, 475 N.J. Super. 279, 288-89 (App. Div. 2023) (explaining that "an offeree will still be bound by [an] agreement if a reasonably prudent user would be on inquiry notice of the terms" (*citing Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012))); *Nguyen v.*

*Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (explaining that inquiry notice of the terms of an arbitration agreement renders that arbitration agreement enforceable under California law).

Here, Samsung identifies three reasons that it believes mandate arbitration of Faridian's claims in the absence of a signed agreement. *First*, Samsung explains that *all* Galaxy Book 3 devices sold in the United States were sold with external labeling stating:

> IMPORTANT: By opening the package or using the product, you accept Samsung's Terms & Conditions & its Dispute Resolution Agreement (including arbitration). Full terms, warranty, & opt-out details are at www.samsung.com/us/support/legal/PC, enclosed materials & on-product settings.

Waitley MTC Decl. ¶¶ 10-14 (citing D.Es. 65-4 & 65-5). Because, as Samsung represents, all Galaxy Book 3 devices were packaged in this way, Faridian—who purchased his Galaxy Book 3 from Samsung—must have also received his Galaxy Book 3 with the above labeling. *Id.* This kind of notice, "where notice of contractual terms is provided on the exterior physical packaging containing the product," is commonly referred to as a "shrinkwrap agreement." *Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-10238, 2021 WL 5578736, at *9 (D.N.J. Nov. 29, 2021) (citing *James*, 852 F.3d at 267).

*Second*, Samsung explains that the URL provided on the above external label would have directed Faridian to a webpage where he could have reviewed the terms of the Arbitration Agreement. Waitley MTC Decl. ¶¶ 15-18 (citing D.E. 65-6). *Third*, Samsung contends that the inside of Faridian's charging cord box included a six-page pamphlet stating the below on the pamphlet's cover:

18

**TERMS & CONDITIONS**

Section 1: Arbitration Agreement
Section 2: Standard Limited Warranty
Section 3: Other Important Information

**IMPORTANT LEGAL INFORMATION**

**READ THIS INFORMATION BEFORE USING YOUR DEVICE. OPENING THE BOX, USING, OR RETAINING THE DEVICE CONSTITUTES ACCEPTANCE OF THESE TERMS & CONDITIONS.**

**ARBITRATION AGREEMENT – This Samsung-branded product ("Product") is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ('Samsung"). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-Samsung (726-7864) and providing the applicable information. For complete arbitration terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.**

Waitley MTC Decl. ¶¶ 19-22 (citing D.E. 65-9). The terms of the Arbitration Agreement were then provided on the first page of the pamphlet. D.E. 65-9. This kind of notice is commonly referred to as "in-the-box" notice. *See, e.g.*, *Noble*, 682 F. App'x at 117 n.4 ("[I]n-the-box contracts, are terms included in a document inside the box that contains the purchased product." (citation modified)).

The shrinkwrap and in-the-box pamphlet that Samsung represents must have been included with Faridian's purchase provide all the necessary features of an enforceable arbitration agreement. The shrinkwrap explicitly and unambiguously states that by opening or using the Galaxy Book 3, the user was assenting to "Samsung's Terms & Conditions & its Dispute Resolution Agreement (including arbitration)." D.E. 65-4. The reference followed a conspicuous advisory that stated "IMPORTANT" in all caps. *Id.* The advisory further provided that the full terms of the arbitration agreement were located both at the provided URL and inside the box. *Id.* Opening and using the device with such a label affixed would have therefore provided sufficient inquiry notice to assume Faridian's assent to the terms of the Arbitration Agreement.

19

The in-the-box pamphlet itself also would have also provided inquiry notice to Faridian. The front cover of the pamphlet—which was apparently placed next to the Galaxy Book 3's charger, where a user would have necessarily encountered it—stated that the terms and conditions included an arbitration agreement. D.E. 65-9. The front cover further provided in bold capitalized text "**ARBITRATION AGREEMENT**" and explained in bold (but not capitalized) text, that the product within the box was "subject to a binding arbitration agreement," the terms of which were included within the pamphlet. *Id.* The very first section of the pamphlet then provided the terms. *Id.* Given the pamphlet's purported placement, the cover's presentation, and the placement of the Arbitration Agreement's terms within the pamphlet, visibility of the Arbitration Agreement's existence was high and would have provided Faridian with inquiry notice. *See Noble*, 862 F. App'x at 114-15.

Therefore, if Samsung's contentions are true, Faridian would be subject to arbitration. Shrinkwrap agreements that conspicuously provide notice of arbitration terms render those terms enforceable when the consumer opens or uses the product. *See James*, 852 F.3d at 267. And in addition to shrinkwrap, Samsung also provided an in-the-box pamphlet which also would have placed Faridian on inquiry notice. *See Westerkamp v. Samsung Elecs. Am., Inc.*, No. 21-5639, 2023 WL 4172967, at *6 (D.N.J. June 26, 2023) (finding that shrink wrap and in-the-box notice provided sufficient notice of an arbitration agreement); *Vasadi*, 2021 WL 5578736, at *8-9 (same).

At this stage, however, the Court cannot conclude that Samsung's version of the facts is true. Samsung primarily relies on declarations. But Faridian relies on a declaration too. In his declaration, Faridian disputes ever having received the external label, which contained both the notice of the Arbitration Agreement and the URL directing users to a webpage containing the full terms of the Arbitration Agreement, or the pamphlet that was purportedly packaged with the

Galaxy Book 3's charger.  D.E. 69-1 ("Faridian Decl.") ¶¶ 3-5.  Because the Court must make all reasonable inferences in Faridian's favor, it may not inexplicably credit Samsung's declaration that all Galaxy Book 3 devices were packaged with the label and pamphlet Samsung purports they were when there is a competing declaration attesting that Faridian received a Galaxy Book 3 that came without the label or pamphlet.

To resolve the conflicting declarations, the parties may undergo limited discovery.  If, after discovery, Faridian's declaration "blatantly contradicts" a developed record demonstrating that Faridian must have received the shrinkwrap label and the in-the-box pamphlet, the Court will consider a renewed motion to compel arbitration.  *See, e.g.*, *Barclays Servs., LLC v. Ademuwagun*, No. 23-20798, 2025 WL 2356184, (D.N.J. Aug. 14, 2025).

## C.    Conclusion

Having determined that Faridian's declaration, on this record, is sufficient to raise a genuine issue of material fact, the Court will **DENY** Samsung's Motion to Compel *without prejudice*.  The parties may engage in limited discovery on the narrow issue of whether an agreement to arbitrate exists.  Samsung may then file a renewed motion to compel arbitration following the completion of discovery.  Further, because an enforceable agreement to arbitrate between Faridian and Samsung may exist, this Court will stay the action as to *Faridian only* pending the resolution of whether his claims are subject to arbitration.  An appropriate Order accompanies this Opinion.

## III.   SAMSUNG'S MOTION TO DISMISS

### A.    Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under

21

any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "'probability requirement,'" plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**B.    Discussion**

Samsung moves to dismiss Plaintiffs' claims for consumer fraud, breach of implied warranties, and unjust enrichment from Plaintiffs' Second Amended Complaint. For the reasons

22

set forth below, this Court will **GRANT in part**, **DENY in part**, and **DEFER in part** the Motion to Dismiss.

Accordingly, the Court will **GRANT** Samsung's Motion to Dismiss with respect to all consumer fraud claims except for Faridian's.  The Court will therefore **DISMISS** Counts IV, VI, VIII, XIII, and XIV.  And for the reasons the Court provided above, *see supra* Section II, the Court will not address Faridian's claims at this stage and will **DEFER** on Counts IX, X, and XI.

### 1.      Consumer fraud

Plaintiffs bring several counts for consumer fraud violations under New York law (NYGBL), Florida law (FDUTPA), North Carolina law (UDTPA), Pennsylvania law (UTPCPL), and Texas law (TDTPA).  *See supra* Section I.C.  Plaintiffs' consumer fraud claims are based on Samsung's alleged failure to disclose the Overheating Defect to Plaintiffs before their purchases. SAC ¶¶ 91-128; MTD Opp'n at 1-2.  Samsung argues that Plaintiffs' pleadings are insufficient because they fail to plausibly allege (1) which, if any, misrepresentations they reviewed before purchasing their Galaxy Books; (2) that Samsung had presale knowledge of a uniform Overheating Defect across the Galaxy Books[7]; (3) that Samsung had a duty to disclose the Overheating Defect; and (4) reliance or causation with respect to Samsung's purported failure to disclose.  MTD at 2. Samsung also makes several state-specific arguments.  *See id.*  Because Plaintiffs have not plausibly alleged presale knowledge of a uniform defect across all models of Galaxy Books prior

---

[7] It is not clear whether Plaintiffs allege that all six distinct Galaxy Book models suffer from the exact same defect or whether they suffer from distinct defects that result in the same symptoms. *See* SAC ¶¶ 2-3.  Because (1) Samsung characterizes the alleged defect as a uniform one and Plaintiffs do not dispute this characterization; (2) Plaintiffs may not rely only on a defect's symptoms to describe a defect, *see Stockley v. Nissan of North America, Inc.*, 701 F. Supp. 3d 682, 694-95 (M.D. Ten. 2023); *Diaz v. FCA US LLC*, No. 21-906, 2022 WL 4016744, at *29 (D. Del. Sept. 2, 2022); and (3) Plaintiffs routinely refer to "the Defect" or "the Overheating Defect, the Court assumes Plaintiffs allege all Galaxy Models suffered from the same defect.

23

to Plaintiffs' purchase, this Court agrees that Plaintiff's statutory consumer claims fail. The Court therefore does not reach Samsung's other consumer fraud-based arguments.

### i. Each state's consumer fraud statute requires presale knowledge

As discussed above, Plaintiffs bring several counts for consumer fraud violations under the laws of various states. Each state requires plausibly pleading presale knowledge to demonstrate that an alleged omission—like Samsung's purported failure to disclose the Overheating Defect—is actionable under its consumer fraud statute.[8] *See, e.g.*, *Ludwig v. FCA US LLC*, 795 F. Supp. 3d 525, 559 (D.N.J. 2019) (explaining, in a case involving claims under the laws of New Jersey, California, Florida, Illinois, Michigan, Ohio, Pennsylvania, Texas, that "[f]or any fraud claim to survive, a plaintiff must properly allege the defendant's knowledge of the defect at the time of the purchase"); *see also, e.g.*, *Diaz*, 2022 WL 4016744, at *24-25 (dismissing NYGBL and TDTPA claims for failure to adequately plead presale knowledge); *Matthews v. Am. Honda Motor Co.*, No. 12-60630, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value."); *Bailey v. Certain Interested Underwriters at Lloyd's London*, 701 F. Supp. 3d 296, 309 (E.D.N.C. 2023) (explaining that pleading a fraud-based claim under the UDTPA requires "plausibly alleg[ing] that the . . . defendant had knowledge"). Plaintiffs' failure to plausibly allege that Samsung had presale knowledge would therefore doom their statutory consumer fraud claims.

### ii. Plaintiffs' Second Amended Complaint does not plausibly plead presale knowledge of any Overheating Defect

Plaintiffs allege that Samsung possessed knowledge of a uniform Overheating Defect across the various Galaxy Book models based on "customer complaints, product reviews, warranty

---

[8] Plaintiffs do not dispute that each statutory consumer fraud claim they assert requires pleading presale knowledge. MTD Opp'n at 7-9.

24

claims, and its own experience from other products that it has manufactured and sold that overheated excessively." SAC ¶ 98. Knowledge "may be alleged generally" and is not subject to the particularity requirement imposed by Federal Rule of Civil Procedure 9(b). *Ludwig*, 795 F. Supp. 3d at 541 (quoting Fed. R. Civ. P. 9(b)). Despite the less stringent pleading standards, Plaintiffs nevertheless fail to plausibly allege that Samsung had knowledge of the Overheating Defect in any or all its Galaxy Book models. Accordingly, the Court will **GRANT** Samsung's Motion to Dismiss with respect to Plaintiffs' statutory consumer fraud claims and **DISMISS** Counts IV, VI, VIII, Count XIII, and XIV.

a.    Customer complaints and product reviews

Plaintiffs point to several online reviews and complaints that they allege informed Samsung that the six different Galaxy Book models at issue in this litigation suffered from the same Overheating Defect. Plaintiffs quote a review from the Men's Journal[9] that stated a Galaxy Book 1 "got hot. Very hot" after performing a software update. SAC ¶ 99. The Men's Journal Review surmised that the Galaxy Book 1 may have gotten so hot because the model did not require having a fan. Men's Journal Review.

Plaintiffs also point to a review from Softpedia[10] of the Galaxy Book 1 that quoted Samsung's manual, which warned:

> When you use apps that require more power or use apps on your device for an
> extended period of time, your device may feel hot to the touch. This is normal and

---

[9] SAC ¶ 99 (quoting mensjournal.com, *available at* https://www.mensjournal.com/gear/72-hours-with-the-samsung-galaxy-book-w483499 (*last accessed* Nov. 30, 2022) ("Men's Journal Review")).

[10] SAC ¶ 100 (citing newsoftpedia.com, *available at* https://news.softpedia.com/news/samsung-s-new-windows-10-laptop-is-slower-when-the-keyboard-isn-t-connected-514022.shtml (*last accessed* Dece. 5, 2022) ("Softpedia Review")).

25

should not affect your device's lifespan or performance.  If the device overheats or feels hot for a prolonged period, do not use it for a while.

*Id.* ¶ 100.

Next, to support their contention that Samsung had knowledge of the Overheating Defect, Plaintiffs rely on a review from ZDNet[11] of a Galaxy Book 360 which stated that the Galaxy Book 360 "overheated at times" and that this overheating was not "caused by the fan design but by how thin the device is."  *See id.* ¶ 101 (quoting ZDNet Review).  Plaintiffs further rely on complaints posted on Samsung's community forum regarding overheating Galaxy Book Pro 360 and Galaxy Book 2 Pro 360 laptops and a United States Consumer Product Safety Commission Report.  *Id.* ¶¶ 102-109, 115.  Finally, Plaintiffs also cite to Reddit threads that discuss overheating in Galaxy Book Pro 360 and Galaxy Book 2 Pro 360 laptops.  *Id.* ¶¶ 112-14.

There are several problems with Plaintiffs' allegations.  Chief among them is Plaintiffs' reliance on a what appears to a be a random smattering of online reviews and postings—the overwhelming majority of which concern only a subset of the Galaxy Book models—to imply Samsung possessed knowledge of an apparently uniform Overheating Defect across six distinct types of laptops.  Indeed, the postings and reviews Plaintiffs rely on belie their own allegations that any defect in *one* device would have put Samsung on notice about the *same* defect in another.  For example, Plaintiffs cite a review that indicates the *Galaxy Book 1* would overheat because it lacked a fan.  *See id.* ¶ 99 (citing Men's Journal Review).  Plaintiffs quote a review that indicates that the *Galaxy Pro 360* overheated, not because of the fan, but because of the device's thinness.  *Id.* ¶ 101 (citing ZDNet Review).  The Softpedia Review, in contrast, does not disclose that the

---

[11] SAC ¶ 101 (quoting www.zdnet.com, *available at* https://www.zdnet.com/article/using-the-galaxy-book-pro-360-for-a-month-a-great-swiss-knife-that-could-be-sharper/ (*last accessed* May 21, 2023) ("ZDNet Review")).

Galaxy Book 1 overheated at all. *Id.* ¶ 100 (citing Softpedia Review).[12]  Taken together (or separately), these reviews do not give rise to the reasonable inference that Samsung knew of a uniform defect affecting any or all Galaxy Book devices.

Plaintiffs also rely on complaints posted to Samsung's community forums and on a United States Consumer Product Safety Commission Report to prove presale knowledge. *Id.* ¶¶ 103-09, 112, 115.  But all the community forum complaints appear to concern only the Galaxy Book Pro 360, the Galaxy Book Pro 2 360, or Samsung laptops that are not at issue in this litigation. *See id.* Plaintiffs cite no complaints regarding either the Galaxy Book 1, the Galaxy Book Pro, or the Galaxy Book 2 360.[13]  Yet, Plaintiffs do not explain how the complaints they do cite could have put Samsung on notice of an Overheating Defect affecting all Galaxy Book models at issue *here*. *See Priano-Keyser v. Apple, Inc.*, No. 19-9162, 2019 WL 7288941, at *7 (D.N.J. Dec. 30, 2019) (rejecting allegations of presale knowledge based on complaints related to Apple watches other than the Apple watch at issue).

Next, the United States Consumer Product Safety Commission Report, most of the Reddit threads (save for one comment), and most of the community forum complaints (save for three), cannot show presale knowledge because they postdate Plaintiffs' purchases, rendering them entitled to "no weight, as they logically could not provide pre-sale knowledge." *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537, 2023 WL 4045156, at *12 (D.N.J. June 16, 2023)

---

[12] The Softpedia Review discloses only that the manual for the Galaxy Book 1 advised that the laptop "may feel hot to the touch" when using "apps that require more power" or when using "apps on [the] device for an extended period of time."  SAC ¶ 100.  It provides no indication that the reviewer experienced the Overheating Defect.  It is therefore puzzling how the Softpedia Review could have provided Samsung with constructive knowledge that the Galaxy Book 1, much less *all* Galaxy Books, suffered from the Overheating Defect.

[13] Nor are there complaints about the Galaxy Book 3, which is only at issue for Faridian, whose claims the Court does not address.

(citing *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022)).  For example, Plaintiffs cite a complaint from the community forum that was posted on July 7, 2022, SAC ¶ 109, and Reddit threads that were posted on July 31, 2022 and September 27, 2022, *id.* ¶¶ 113-14, but the latest of any of Plaintiffs' Galaxy Book purchases occurred on June 29, 2022, *id.* ¶¶ 23-90.  Plaintiffs also cite an April 14, 2022 community forum complaint about the Galaxy Book Pro 360 and a May 10, 2022 community forum complaint about the Galaxy Book 2 Pro 360, *id.* ¶¶ 105, 107,  but the latest Galaxy Book Pro 360 purchase was on November 19, 2021 and the latest Galaxy Book 2 Pro 360 was on March 18, 2022, *id.* ¶¶ 50, 61.

For the Galaxy Book 1, only the Men's Journal Review predates a Plaintiff's purchase.  *Id.* ¶¶ 66, 99.  For the Galaxy Book Pro 360:  (1) no complaints or reviews predate Trisal's purchase; (2) only the ZDNet Review predates Williams's purchase; (3) the ZDNet Review and one Reddit post predate Rivera's purchase; and (4) the ZDNet Review, one Reddit post, and two community forum complaints predate Berry's and Gatfane's purchases.  *Id.* ¶¶ 23, 49, 56, 61, 82, 101, 104-05, 112.  For two reasons, however, even the ZDNet Review, Reddit post, and two community forum complaints combined are insufficient to plausibly allege that Samsung had presale knowledge of an Overheating Defect in either the Galaxy Book Pro 360 or in any Galaxy Book.

*First*, courts must be careful when relying on complaints that appear on third-party websites to infer that a defendant, by virtue of these third-party complaints, had constructive knowledge of a particular defect.  *See Oliver v. Funai Corp., Inc.*, No. 14-4532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) (dismissing allegations based on complaints appearing on third-party websites because plaintiffs had "provided no indication that Defendants viewed or would have viewed those websites").  Here, Plaintiffs provide no reason to infer that Samsung was monitoring Reddit, ZDNet.com, or MensJournal.com.  *See Cho*, 636 F. Supp. 3d at 1169 (finding that customer

28

complaints did not establish knowledge of a defect because plaintiffs had not "alleged facts establishing that these consumer complaints were 'more than a blip on [d]efendants' radar'" (quoting *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-1298, 2021 WL 62502, at \*6 (C.D. Cal. Jan. 4, 2021))); *see also Wesley v. Samsung Elecs. Am., Inc.*, No. 20-18629, 2021 WL 5771738, at \*3 (D.N.J. Dec. 3, 2021) (finding "a handful of public complaints on the third-party websites" insufficient to plausibly allege knowledge); *see also Oliver*, 2015 WL 9304541, at \*4 ("Indeed, this Court has previously explained that imputing knowledge of a defect to a manufacturer based upon an internet posting would mean 'that virtually every consumer product company would be subject to fraud claims and extensive discovery.'" (quoting *Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 2488155, at \*4 (D.N.J. Aug. 11, 2009))).

*Second*, these sparse complaints are too few to plausibly show that Samsung possessed knowledge of the Overheating Defect in the Galaxy Book Pro 360, never mind all Galaxy Book models at issue.  Indeed, the complaints "stan[d] in stark contrast to those cases that relied on dozens of detailed, consistently descriptive complaints as the basis of pre-sale knowledge."  *See, e.g.*, *Diaz*, 2022 WL 4016744, at \*30 (collecting cases); *McMahon* 2023 WL 4045156, at \*13 (finding that even 30 complaints did not lead to an inference of plausibility); *Tapply v. Whirlpool Corp.*, 148 F.4th 407, 416 (6th Cir. 2025) (rejecting allegations of presale knowledge because "[t]he allegations were not 'frequent enough that they were not lost in a sea of complaints and repairs amassing by the dozens each day.'" (quoting *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021))).

The same reasoning also applies to the single presale ZDNet Review Plaintiffs rely on for the Galaxy Book 1.  Plaintiffs' reliance on the above-discussed product reviews and complaints are therefore insufficient, without more, to plausibly infer that Samsung had presale knowledge of

a uniform defect across any or all Galaxy Book models. Plaintiffs' cited complaints and reviews are accordingly insufficient to support their claims of consumer fraud.

b.    Presale testing

Plaintiffs also rely on presale testing to claim Samsung had presale knowledge of the Overheating Defect. According to Plaintiffs, Samsung "would have detected the Overheating Defect in [presale] testing the [Galaxy Books] including because the Overheating Defect is unavoidably apparent whenever a [Galaxy Book] is left running for any period of time." SAC ¶ 102. Plaintiffs' allegations regarding presale testing are also inadequate for at least two reasons.

*First*, Plaintiffs do not plausibly plead that the Overheating Defect was so "unavoidably apparent" that Samsung would necessarily have discovered the Overheating Defect during routine presale testing. Plaintiffs' own allegations indicate that any heating issues manifested under some circumstances but not necessarily under all, and not necessarily immediately. For example, the ZDNet Review only indicated that a Galaxy Book 360 heated up during a software update. *Id.* ¶ 101. The Men's Journal Review indicated only that a Galaxy Book 1 heated up "at times." *Id.* ¶ 99. In addition, Trisal purchased a Galaxy Book Pro 360 in June 2021 and a Galaxy Book 2 Pro 360 in March 2022, *id.* ¶¶ 49-50, but it was not until December 2022 that Trisal began experiencing any overheating issues, *id.* ¶ 52. Describing the Overheating Defect as "unavoidably apparent" is not only unsupported by Plaintiffs' allegations but also contradicted by them.

*Second*, notwithstanding the above, courts routinely reject allegations that a defendant had presale knowledge about a particular defect because some unspecified testing would have inevitably revealed it. *See, e.g.*, *Cho*, 636 F. Supp. 3d at 1171 (rejecting consumer fraud claims because allegations that presale "tests would have somehow revealed the [defect]" were insufficient to show presale knowledge); *Maugain v. FAC US LLC*, No. 22-116, 2023 WL 1796113,

30

at *10 (D. Del. Feb. 7, 2023) ("[G]eneral statements about the testing of cars and potential data that FCA may (perhaps likely does) possess about the Class Vehicles provide insufficient support for a plausible inference that FCA actually knew about the alleged defect."); *Burdt v. Whirlpool Corp.*, No. 15-1563, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) ("Plaintiff must allege more than an undetailed assertion that the testing must have revealed the alleged defect.").  Indeed, "[t]o accept Plaintiff's general allegations about [a defendant's] internal testing or quality controls it may or may not employ is to create a presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line . . . ." *Stewart v. Electrolux Home Prods., Inc.*, No. 17-1213, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018).   Without more, Plaintiffs' conclusory allegation that Samsung "would have detected the Overheating Defect" does not permit Plaintiffs' consumer fraud claims to survive.  *See Burdt*, 2015 WL 4647929, at *4 (rejecting conclusory allegation that "the testing *must* have revealed the alleged defect"); *Ponzio v. Mercedez-Benz USA, LLC*, 447 F. Supp. 3d 194, 228 (D.N.J. 2020) (finding allegations of presale knowledge based on presale testing plausible because plaintiffs explicitly alleged that the defendant "engaged in at least four years of development and testing prior to utilizing the new type of [defective product feature]" and tested the defective product feature in "laboratory and everyday conditions").

Because Plaintiffs' allegations regarding any presale testing are conclusory, they cannot give rise to a plausible inference of presale knowledge.

c.     Warranty appendix

Plaintiffs also claim that Samsung possessed presale knowledge of the Overheating Defect because in an appendix to the Galaxy Books' warranty manual, there were instructions to contact a "service center if the product emits smoke or there is a burning smell."  SAC ¶¶ 97, 111 (citing D.E. 59-10); MTD Opp'n at 2.  The language that Plaintiffs quote does not appear in D.E. 59-10.

31

It appears that Plaintiffs included the wrong exhibit and instead meant to include the exhibit to an inoperative complaint at D.E. 40-11. *See* D.E. 47. The exhibit at D.E. 40-11 states:

> Do not store the computer in an enclosed space, such as a computer bag, while it is running.
>
> Never heat the computer (or the battery) or put the computer (or the battery) into a fire or microwave.
>
> Take care not to allow metal objects such as a key or clip to touch the batter terminal (metal parts).
>
> If the product emits smoke or there is a burning smell, disconnect the power plug from the wall outlet and contact a Samsung Service Center immediately.

D.E. 40-11 at 2. Rather than show presale knowledge of an Overheating Defect, the exhibit that Plaintiffs appear to have intended to cite demonstrates standard warnings about electrical devices and the risks that electrical components generally face. Relying on an appendix that warns against placing a computer in a microwave and thereafter instructs users to disconnect the computer if it starts to smoke or burn does not make Plaintiffs' presale knowledge allegations plausible. *See Cho*, 636 F. Supp. 3d at 1169 (finding that "a general instruction" for removing excess oil deposits was not "specific enough to raise a reasonable inference" that the vehicles at issues excessively consumed oil).

d.    <u>Other devices</u>

Finally, Plaintiffs allege that Samsung must have known about the Overheating Defect across the six different Galaxy Book models because several years before the Galaxy Books were launched, Samsung sold smartphones that suffered from a different overheating defect. SAC ¶ 116. Plaintiffs' smartphone-based allegations do not plausibly show presale knowledge. For one, courts have warned against identifying defects by the symptoms they produce, rather than by the problems that drive them. *Stockley*, 701 F. Supp. 3d at 694-95 (rejecting allegations of presale

32

knowledge because plaintiffs tried to attribute "virtually problems that any consumer may experience" to a single defect)); *Diaz*, 2022 WL 4016744, at \*29 (distinguishing out-of-circuit cases addressing presale knowledge based on whether the specific defect was identified or whether only the symptoms were identified). Here, Plaintiffs do not explain what, if anything other than heat, is similar about the alleged defect in the Galaxy Books and the defect present in the previously recalled smartphones. Plaintiffs therefore fail to plausibly allege that Samsung must have known about the Overheating Defect in the Galaxy Books based on some other defect observed in an unrelated device.

In addition, the previously recalled smartphones are not Galaxy Books, they are not laptops, and they are not even tablets. Permitting a plaintiff to allege presale knowledge of some purported defect based solely on the fact that the defendant has sold a defective product before would impermissibly (and indefinitely) expose sellers to fraud claims and extensive discovery. All a plaintiff would have to show to initiate discovery is allege that a defendant had sold *something* defective before. *See Oliver*, 2015 WL 9304541, at \*4 (rejecting allegations of presale knowledge based on internet postings because accepting them would "mean 'virtually every consumer product company would be subject to fraud claims and extensive discovery'" after only showing that someone somewhere complained on the internet (quoting *Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 248815, at \*4 (D.N.J. Aug. 11, 2009))). Because such a theory relies on inferences too attenuated to consider plausible, Plaintiffs' allegations of presale knowledge based on the previously recalled smartphones are inadequate.

Having concluded that Plaintiffs' allegations do not raise a reasonable inference of presale knowledge for any or all Galaxy Books, the Court will **GRANT** Samsung's Motion to Dismiss

33

with respect to Plaintiffs' statutory consumer fraud claims and **DISMISS** Counts IV, VI, VIII, XIII, and XIV.

2.    *Breach of implied warranty*

Plaintiffs bring claims for breach of implied warranties against Samsung on behalf of Williams, Radwanski, Trisal, Rivera, Gatfane, and Berry under their respective state laws (or the states where they purchased their Galaxy Books).  *See infra* Section I.C.  Plaintiffs claim that the Overheating Defect was a latent defect inherent in the product, which necessarily rendered the Galaxy Books unfit for their intended use and unmerchantable.  SAC ¶ 208; Opp'n at 30-31. Samsung argues that Plaintiffs' claims for breach of implied warranties cannot survive Rule 12(b)(6) because (1) Plaintiffs do not plausibly allege that any warranty was breached during the warranty period; (2) Trisal, Gatfane, and Berry do not allege facts showing unmerchantability; (3) Plaintiffs ignore privity requirements; and (4) Radwanski, Rivera, and Berry do not allege that they provided pre-suit notice, as required by their respective states' laws.  MTD at 3.  Because Samsung's limited warranty modified the terms of the implied warranties and Radwanski, Trisal, Rivera, Gatfane, and Berry do not plead having complied with the terms of the implied warranties, Plaintiffs' claims for breach of implied warranties do not survive 12(b)(6) scrutiny.  The Court therefore need not reach Samsung's other arguments on these counts.

Accordingly, the Court will **GRANT** Samsung's Motion to dismiss with respect to Plaintiffs' implied warranty claims for Radwanski, Trisal, Rivera, Gatfane, and Berry.  The Court will therefore **DISMISS** Counts II, III, V, VII, and XII.

i.    **<u>The express warranty's terms modify the terms of the implied warranties</u>**

The laws of Pennsylvania, New York, Indiana, Wisconsin, and North Carolina permit sellers to modify or disclaim implied warranties so long as the modification or disclaimer is

34

provided in conspicuous writing and explicitly mentions merchantability.   13 Pa. Code Rule § 2136(b); N.Y. U.C.C. § 2-316(b); Tex. Bus. & Com. Code § 2.316(b); Ind. Code § 26-1-2-316; Wis. Stat. § 402.316(2); N.C. Gen. Stat. Ann. § 25-2-316(2); *see* U.C.C. § 2-316(2).   Because Samsung's limited warranty is provided in writing, is conspicuous, explicitly mentions merchantability, and is not challenged as unconscionable, this Court will enforce the limited warranty's modification of the implied warranties of merchantability and fitness for particular purpose.

Samsung's limited warranty states:

**THERE ARE NO EXPRESS WARRANTIES OTHER THAN THOSE LISTED AND DESCRIBED ABOVE.   *NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE.*   NO OTHER EXPRESS WARRANTY OR GUARANTY GIVEN BY ANY PERSON, FIRM OR CORPORATION WITH RESPECT TO THIS PRODUCT SHALL BE BINDING ON SAMSUNG, SAMSUNG TAKES NO RESPONSIBILITY FOR THE QUALITY OF THE PRODUCT, AND ASSUMES NO RESPONSIBILITY THAT THE PRODUCT WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE BUYING THE PORDUCT EXCEPT AS OTHERWISE PROVIDED IN THIS LIMITED WARRANTY OR IN APPLICABLE LAW. . . . *THIS LIMITED WARRANTY SHALL NOT EXTEND TO ANYONE OTHER THAN THE ORIGINAL PURCHASE OF THIS PRODUCT, IS NONTRANSFERABLE AND STATES YOUR EXCLUSIVE REMEDY.***

D.E. 66-6 ("Limited Warranty") at 5-6 (italics added).[14]   Plaintiffs appear to argue that the Limited Warranty is not conspicuous.   *See* MTD Opp'n at 33.   Plaintiffs are incorrect.

---

[14] Plaintiffs do not attach a photo of the actual warranty to the Second Amended Complaint. Samsung, however, attaches a copy of the warranty to its MTD.   *See* D.E. 66-5 ("Waitley MTD Decl.") ¶ 6; Limited Warranty.   The warranty forms part of the basis of Plaintiffs' Second Amended Complaint and is referred to extensively by the Second Amended Complaint.   *See, e.g.*, SAC ¶ 97 (citing to the "appendix to the warranty information" but not including the warranty information),

35

Whether a warranty disclaimer is conspicuous is "a decision for the court." *Materials Handling Enters., Inc. v. Atlantis Techs., LLC*, 563 F. Supp. 3d 387, 397 (W.D. Pa. 2021) (quoting 13 Pa. Code Rule § 1201(b)(10)); *Carbo Indus., Inc. v. Becker Chevrolet, Inc.*, 491 N.Y.S. 2d 786 (1985) (quoting N.Y. U.C.C. § 1-201(10)); *Adams*, 395 F. Supp. 3d at 853 (quoting Tex. Bus. & Com. Code § 1.201(b)(10)); *Jones v. Abriani*, 350 N.E. 2d 635, 645 (Ind. 1976) (quoting Ind. Code § 26-1-1-201(10)); *Artisan and Truckers Casualty Co. v. PACCAR Inc.*, 716 F. Supp. 3d 720, 731-32 (E.D. Wis. 2024) (quoting Wis. Stat. § 401.201(f)); *Blackman v. Boston Whaler, Inc.*, 649 F. Supp. 3d 142, 150 (E.D.N.C. 2023) (quoting N.C. Gen. Stat. Ann. § 25-2-316(2)). A warranty disclaimer "is conspicuous where a printed heading is in capitals, language in the body is larger than the surrounding text, or the relevant provisions otherwise contrasts with the surrounding text in type, font, or color." *Styles v. Thor Motor Coach*, No. 21-19231, 2023 WL 2645024, at *4 (D.N.J. Mar. 27, 2023); *see Artisan and Truckers*, 716 F. Supp. 3d at 732 (similar); *Blackman*, 649 F. Supp. 3d at 150 (similar).

Here, Samsung provides the terms of its Limited Warranty in a stand-alone document. *See* Limited Warranty. The modification is provided under a section titled "**Limitations and Exclusions**." *Id.* at 5. The modification appears in bold capitalized text, contrasting it from the surrounding text. *Id.* at 5-6. No other text appears in the same font. *See id.* The modification is therefore conspicuous. The modification also expressly mentions not only the implied warranty of merchantability, but also the implied warranty of fitness for a particular purpose. The Limited

---

¶¶ 117, 118, 142.g, 154. Because Plaintiffs do not dispute the authenticity or accuracy of the Limited Warranty provided by Samsung as an exhibit attached to its MTD, this Court may consider it incorporated by reference. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993). This exception helps prevent plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *See Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 684 (N.D. Cal. 2021) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998))).

Warranty further limits any implied warranties to the duration of the express warranties and explains that the Limited Warranty is the only remedy available.

Samsung therefore validly modified the implied warranties and subjected them to the same duration- and remedy-based limitations that the express warranties were subject to. Accordingly, Plaintiffs' breach of implied warranty claims cannot survive Rule 12(b)(6) if Plaintiffs' claims do not allege that Samsung breached the terms applicable to implied warranty.[15]

### ii.     **Radwanski's, Trisal's, Rivera's, Gatfane's, and Berry's implied warranty allegations fail because they do not plead compliance with the terms of the implied warranties**

Samsung challenges the sufficiency of Plaintiffs' breach of implied warranty claims on grounds that Plaintiffs have not shown that Samsung has failed to comply with the terms of the Limited Warranty. MTD at 27-30. The Limited Warranty limits the duration of the warranties to one year and constrains the methods by which purchasers may obtain warranty service in the event of a defect. To obtain warranty service, the Limited Warranty provides that Samsung will provide repair or replace services, and if repair or replace services are unavailable, that Samsung will "provide a refund of the purchase price of the product, LESS THE PRODUCT'S DEPRECIATED VALUE." Limited Warranty at 4. Accordingly, in the event of a defect, Samsung breaches the Limited Warranty if it fails to provide the remedies promised.

---

[15] Plaintiffs object to treating the implied warranties as subject to the same limitations as the express warranties. MTD Opp'n at 33. Plaintiffs complain that this "would essentially merge the implied warranty with the express warranty" and would therefore be improper. *Id.* As explained in this Section, each state's commercial code explicitly allows sellers of goods to modify or disclaim implied warranties. There is no prohibition on subjecting express warranties and implied warranties to the same limitations. Indeed, courts regularly enforce such limitations. *See supra* Section III.B.2.i.

a.       Manifestation during the Limited Warranty's duration

Radwanski, Rivera, and Berry have pled that the Overheating Defect manifested in their Galaxy Books within the duration of the Limited Warranty.  Trisal has also pled that the Overheating Defect manifested within the duration of the Limited Warranty with respect to his purchase of a Galaxy Book Pro 2 360, but not for his purchase of a Galaxy Book Pro.  Gatfane fails to plead that the Overheating Defect manifested in his Galaxy Book within the Limited Warranty's duration.  Samsung does not challenge the sufficiency of Williams's breach of implied warranty based on the date of the defect's manifestation.  *See* MTD at 28-29.

Radwanski purchased his Galaxy Book 2 360 on June 29, 2022.  *Id.* ¶ 41.  He alleges that it began overheating within the first two weeks of purchase.  *Id.* ¶¶ 43.  Radwanski has therefore plausibly pled that the Overheating Defect manifested within the warranty period.

Rivera purchased a Galaxy Book Pro 360 on July 23, 2021.  *Id.* ¶ 56.  Rivera alleges that within one week of purchase, his Galaxy Book became "uncomfortably hot," the fan noise became "excessively loud," and a "faint burning odor" started to emanate from the laptop.  *Id.* ¶ 58.  Rivera has therefore plausibly pled that the Overheating Defect manifested within the warranty period.

Berry purchased a Galaxy Book Pro 360 on October 10, 2021.  *Id.* ¶ 82.  Berry alleges that within one year of purchase, her Galaxy Book "frequently bec[ame] uncomfortably hot to the touch; the screen flicker[ed]; the touchpad [was] erratic, unresponsive, and/or delayed; and the fan system operate[d] excessively loud[ly]."  *Id* ¶ 84.  Berry has therefore plausibly pled that the Overheating Defect manifested within the warranty period.

Trisal purchased his Galaxy Book Pro 360 on June 4, 2021, and his Galaxy Book 2 Pro 360 on March 18, 2022.  *Id.* ¶¶ 49-50.  Trisal alleges that his Galaxy Books suffered from excessive heat in December 2022, which is within one year of his Galaxy Book 2 Pro 360 purchase but is

38

beyond one year of his Galaxy Book Pro 360 purchase. *Id.* ¶ 52. Trisal has therefore plausibly alleged that the Overheating Defect manifested within the warranty period for his Galaxy Book 2 Pro 360 but has not alleged that the Overheating Defect manifested within the warranty period for his Galaxy Book Pro 360.

Plaintiffs argue that because the Overheating Defect was a "latent defect," Trisal (and other Plaintiffs) need not allege that the defect manifested within the warranty period for their claims of breach of implied warranty to be actionable. MTD Opp'n at 30-31. Plaintiffs, however, rely on out-of-circuit cases that this Court does not find persuasive. *Id.* (first citing *Varner v. Domestic Corp.*, No. 16-22482, 2017 WL 3730618, at \*10 (S.D. Fla. Feb. 7, 2017); then citing *Mexica v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1301 (2009)).[16] That a good's components may degrade or break down over time does not permit Plaintiffs to circumvent the rule that a defect that does not manifest within the warranty's duration is generally not actionable under the warranty.[17] *See Amato v. Subaru of Am, Inc.*, No. 18-16118, 2019 WL 6607148, at \*7 (D.N.J. Dec. 5, 2019); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249-50 (2d Cir. 1986) (citing *Walsh v. Ford Motor Co.*, 588 F. Supp. 1512, 1536 (D.D.C. 1984)). Electric components tend to generate heat.

---

[16] In *Varner*, the latent defect was "the increased *risk*" that a refrigerator would catch on fire. 2017 WL 3730618, at \*10. In *Mexica*, the defect was present in the goods but simply was not *discovered* until after the warranty's duration had passed. 174 Cal. App. 4th at 1309-10. Plaintiffs here do not allege that the Overheating Defect was undetectable during the Warranty Period or that the problem with the Overheating Defect was that it posed some risk that could not be detected until it resulted in catastrophe. Both cases are therefore distinguishable, even if persuasive.

[17] "Where the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable." *Skeen v. BMW of N. Am., LLC*, No. 13-531, 2014 WL 283628, at \*12 (D.N.J. Jan. 24, 2014). Plaintiffs have not argued that the limitations on the implied warranties were unconscionable.

And "[a]ll parts will wear out sooner or later and thus have a limited effective life." *Abraham*, 795 F.2d at 250. As the Ninth Circuit aptly put it:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires.

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Plaintiffs do not explain why labeling the Overheating Defect a "latent defect" permits their allegations to escape these applicable principles. Without alleging that the Overheating Defect manifested during the warranty period, Trisal's breach of implied warranty claim is not actionable with respect to the Galaxy Book Pro 360.

Gatfane purchased a Galaxy Book Pro 360 on November 19, 2021. *Id.* ¶ 61. Gatfane alleges that the heat generated by his Galaxy Book was so severe that he could not keep the Galaxy Book on his lap. *Id.* ¶¶ 62-63. Gatfane does not specify when these events took place. *See id.* He does allege that he was in contact with Samsung in Spring 2022 and again sometime in 2023 "but was directed to keep installing the latest software updates since Samsung Support apparently believed this may have been the source of the Overheating Defect." *Id.* ¶ 64. These allegations, however, do not plausibly plead that the Overheating Defect manifested within the warranty period because it is not clear what Gatfane reached out to Samsung Support about, nor is it clear why or even when Samsung "apparently believed" that software updates would resolve the purported Overheating Defect. *Id.* And for the same reasons previously discussed, Plaintiffs' "latent defect" theory does not permit it to avoid pleading that the Overheating Defect manifested during the warranty period. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 3d 614, 621 (M.D.N.C. 2006) (understanding *Abraham* to stand for the "nearly universally accepted proposition" that

40

latent defects are not actionable if they manifest after a warranty's expiration (citing 795 F.2d at 250)).

The Court will therefore **GRANT** Samsung's Motion to Dismiss with respect to Gatfane's breach of implied warranty claim and part of Trisal's breach of implied warranty claim. The Court will therefore **DISMISS** these claims.

b.      Seeking remedies during the Limited Warranty's duration

The Limited Warranty required that purchasers contact Samsung to avail themselves of the exclusive remedy available. But Plaintiffs do not allege that Radwanski, Rivera, or Berry sought repair or replacement from Samsung consistent with the terms of the Limited Warranty. Indeed, Plaintiffs do not allege that Radwanski, Rivera, or Berry ever contacted Samsung about any overheating issues at all. While Plaintiffs do allege that Trisal contacted Samsung in May 2023, Trisal did so after the warranty period expired. *See* SAC ¶¶ 49-50 (alleging Trisal purchased his Galaxy Books on June 4, 2021 and on March 18, 2022); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253-54 (3d Cir. 2010) (holding that plaintiff could not prevail on his breach of warranty claim because plaintiff did not provide notice of any defect within the warranty period). Plaintiffs have not therefore pled that Samsung failed to meet its obligations under the modified implied warranties with respect to Radwanski, Rivera, Berry, or Trisal. *See, e.g., Galitski v. Samsung Telecomm. Am., LLC*, No. 12-4782, 2013 WL 6330645, at *9 (N.D. Tex. Dec. 5, 2013) (dismissing implied warranty claims because plaintiffs did not seek the exclusive remedy provided for by the modified warranties); *Fishman v. Gen. Elec. Co.*, No. 12-585, 2014 WL 1628369, at *5 (D.N.J. Apr. 23, 2014) (same); *see* Prior Opinion at 19-20 (permitting Williams's breach of implied warranty claim to go forth in part because Williams pled having sought repair for damage allegedly caused by the Overheating Defect within the duration of the Limited Warranty).

41

The Court will therefore **GRANT** Samsung's Motion to Dismiss with respect to Radwanski's, Rivera's, and Berry's claims for breach of implied warranty. The Court will therefore **DISMISS** these claims.

c.    <u>Williams's breach of implied warranty claim</u>

Samsung challenges Williams's breach of implied warranty claim on grounds that she has not pled that Samsung failed to provide the remedy promised under the Limited Warranty. MTD at 28-29. In its Prior Opinion, after Samsung challenged the sufficiency of Williams's express warranty claims, this Court explained that Williams plausibly pled that the Overheating Defect manifested within the warranty period and that Williams timely contacted Samsung and sent her Galaxy Book in for repair. Prior Opinion at 17-18. Williams, however, alleges that despite having sent her Galaxy Book in for repair, the Overheating Defect was not cured. SAC ¶¶ 29-36. As this Court therefore explained, Williams adequately pleads that "Samsung failed to repair Williams's issue." Prior Opinion at 18. The Court will not reconsider and change course.

Accordingly, the Court will **DENY** Samsung's Motion to Dismiss with respect to Williams's breach of implied warranty claim.

d.    <u>Summary of claims for breach of implied warranty</u>

In sum, the Court will **GRANT** Samsung's Motion to Dismiss with respect to Radwanski's, Trisal's, Rivera's, Gatfane's, and Berry's claims for breach of implied warranties. Accordingly, the Court will **DISMISS** Counts II, III, V, VII, and XII. The Court will **DENY** Samsung's Motion with respect to Williams's claim for breach of implied warranty.

### 3.    *Unjust enrichment*

Plaintiffs plead that Samsung is liable for unjust enrichment based on the same purportedly fraudulent acts that this Court finds have not been adequately pled.  Specifically, Plaintiffs plead that Samsung

> was unjustly enriched by Plaintiffs' and Class Members' purchases of the [Galaxy Books], which they would not have purchased or would have paid less for but for [Samsung's] misconduct with respect to the Overheating Defect.

SAC ¶ 373.  Plaintiffs further claim Samsung

> was well aware of the Overheating Defect but misrepresented material facts and failed to disclose the Overheating Defect in order to induce Plaintiffs and Class Members to purchase the [Galaxy Books] or pay more than they would have paid for the [Galaxy Books] had they been apprised of the Overheating Defect.

*Id.* ¶ 374; *see id.* ¶¶ 372-76.

To plead an unjust enrichment claim, plaintiffs must allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *see Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state.").

Samsung disputes the viability of Plaintiffs' unjust enrichment claims and makes three arguments.  Samsung argues that because (1) Plaintiffs have failed to state any claim, there is no basis to maintain any unjust enrichment claim; (2) New York law does not permit duplicative unjust enrichment claims, Trisal and de Madriguera could not bring them alongside other claims based upon the same conduct; and (3) Garcia's unjust enrichment claim is premised on the same conduct underlying his FDUTPA claim, Florida law bars his unjust enrichment claim.  MTD at 37-39.

43

Plaintiffs' unjust enrichment claims, however, are premised upon the same purported misconduct underlying their consumer fraud and breach of implied warranty claims. SAC ¶ 372-76. Because this Court finds that Plaintiffs have not adequately pled any misconduct apart from Williams's breach of implied warranty claim, the Court will **GRANT** Samsung's Motion to Dismiss Plaintiffs' unjust enrichment claim with respect to Radwanski, Trisal, Rivera, Gatfane, de Madriguera, Berry, and Garcia. Accordingly, the Court will **DISMISS** Count XV with respect to Radwanski, Trisal, Rivera, Gatfane, de Madriguera, Berry, and Garcia. The Court will **DENY** Samsung's Motion to Dismiss Plaintiffs' unjust enrichment claim with respect to Williams.

## IV.    CONCLUSION

For the reasons above, the Court will:

- **DENY** Samsung's Motion to Compel *without prejudice*;

- **DENY in part** and **GRANT in part** Samsung's Motion to Dismiss;

- **GRANT** Samsung's Motion to Dismiss regarding Counts II, III, IV, V, VI, VII, VIII, XII, XIII, XIV, and XV (with respect to all Plaintiffs except Williams and Faridian);

- **DISMISS** Counts II, III, IV, V, VI, VII, VIII, XII, XIII, XIV, and XV (with respect to all Plaintiffs except Faridian and Williams),

- **DENY** Samsung's Motion to Dismiss with respect to Counts I and XV (with respect to Williams); and

- **DEFER** Samsung's Motion to Dismiss with respect to Counts IX, X, XI, and XV (with respect to Faridian).

Samsung and Faridian may engage in limited discovery on the narrow issue of whether an agreement to arbitrate exists. The parties should provide the Hon. José R. Almonte, U.S.M.J., a

44

proposed discovery schedule regarding this limited discovery in accordance with his preferences.

Samsung may re-file a motion to compel arbitration following the completion of discovery.  An

appropriate Order accompanies this Opinion.

Dated: February 24, 2026

Evelyn Padin, U.S.D.J.